THE STATE OF OHIO, APPELLANT, *v.* COLLINS, APPELLEE.

[Cite as *State v. Collins* (1993), 67 Ohio St.3d 115.]

(No. 92–2143—Submitted May 18, 1993—Decided August 11, 1993.)

*Jeffrey M. Welbaum,* Miami County Prosecuting Attorney, and *Jane T. Skogstrom,* Assistant Prosecuting Attorney, for appellant.

*John C. Holden,* for appellee.

FRANCIS E. SWEENEY, SR., J.  Today we are asked to determine whether an offense classified as a minor misdemeanor is a misdemeanor for purposes of the involuntary manslaughter statute, R.C. 2903.04(B).  For the following reasons, we answer this question in the negative.

R.C. 2903.04(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor." The underlying "misdemeanor" the jury found defendant committed was a violation of R.C. 4511.43, the failure to stop at a clearly marked stop sign. However, a conviction for R.C. 4511.43 is a minor misdemeanor when it is a first offense. R.C. 4511.99(D).

The state argues that for purposes of the involuntary manslaughter statute, the underlying misdemeanor offense includes offenses classified as minor misdemeanors. The state urges us to follow the conflict case of *State v. Montecalvo, supra.*

Additionally, the state relies on our decision announced in *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134. However, *Chippendale* resolved a very different issue than that presented here.

*Chippendale* dealt with whether involuntary manslaughter and aggravated vehicular homicide could both be charged from the same conduct. The case did not consider the sufficiency of the underlying violation to support a charge of involuntary manslaughter. Indeed, we did not need to do so as the defendant's involuntary manslaughter charge was predicated upon the first degree misdemeanor offense of driving under the influence. R.C. 4511.19(A).

Instead, we find more persuasive the rationale advanced by the appellate court and the well-reasoned dissents of Judge Cacioppo in *State v. Montecalvo, supra,* at 7–18, and *State v. Westfall* (July 31, 1991), Summit App. No. 14930, unreported, at 5–15, 1991 WL 149573. As the appellate court and Judge Cacioppo have concluded, we do not believe the General Assembly intended to include a minor misdemeanor as a predicate misdemeanor offense for purposes of the crime of involuntary manslaughter. In construing the General Assembly's intent, we are guided by various Revised Code provisions.

Throughout R.C. Title 29, minor misdemeanors are distinguished from other misdemeanors. In R.C. 2901.02 (classification of offenses), the General Assembly has delineated various categories of crimes. Misdemeanors are further subdivided into four degrees. Minor misdemeanors have their own category. This same classification is found in R.C. 2929.21, which establishes separate penalties for misdemeanors, up to six months in jail, and for minor misdemeanors, a fine of up to $100 only. In addition, there is no right to a jury trial for a minor misdemeanor offense. R.C. 2945.17. Moreover, a prosecution for a minor misdemeanor must be brought within six months (as opposed to two years for a misdemeanor and six years for a felony). R.C. 2901.13(A). Also, a trial for a minor misdemeanor must be held within thirty days after arrest or the service of summons (once again, different time constraints than those for misdemeanors and felonies). R.C. 2945.71.

The rule of statutory construction is that penal laws "shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.-04(A). Having classified misdemeanors and minor misdemeanors separately, and having provided for several distinctions in various code provisions, the General Assembly cannot be presumed to have intended that they merge into one classification, that of "misdemeanors," for purposes of the involuntary manslaughter statute. Any uncertainty must be resolved against the state.

While we agree that most traffic offenses are minor misdemeanors, this fact alone does not indicate that the General Assembly considered all traffic offenses to be equally culpable. To the contrary, it is evident that the General Assembly felt some traffic offenses were more serious and should be punished more harshly. For example, R.C. 4511.19(A)(1), driving under the influence of drugs or alcohol, is a misdemeanor of the first degree for a first-time offense and a court can impose a jail sentence of three days for a first offense. R.C. 4511.99(A)(1). R.C. 4511.99(D) addresses speeding violations and provides that certain violations may be classified as a misdemeanor of the fourth degree for a first offense. Such speeding violations include driving faster than thirty-five m.p.h. in a business district or school zone during recess or arrival or departure times. See *Montecalvo*, Cacioppo, J., dissenting, at 13–14. Also, a violation of R.C. 4511.251, drag racing, is a misdemeanor of the first degree, R.C. 4511.99(B). These strict liability traffic offenses may serve as valid underlying offenses to R.C. 2903.04(B).

We also find persuasive Judge Cacioppo's quote from LaFave & Scott, Criminal Law (2 Ed. 1986) 683, Section 7.13: " * * * There is no logical reason for inflicting manslaughter punishment on one who unintentionally kills another simply because he is committing a traffic violation, unless it makes sense to punish the one-in-a-thousand traffic violation, which by bad luck produces an unexpected death, far more severely than the nine hundred and ninety-nine violations which happily do not produce any such devastating result. * * * It is true that, in the case of crimes defined in terms of bad results, it is often something of an accident whether the specified result occurs or not. Where one seriously wounds another by shooting at him with intent to kill, or severely but unintentionally injures him by reckless driving, chance often takes a hand in deciding whether the victim dies or recovers, and thus whether the defendant receives a greater or lesser punishment. If the bad result which happens is actually intended, or if it is recklessly produced (especially by one conscious of the risk), it does not seem too harsh to make the severity of his punishment depend somewhat on the actual result, however accidental. Where, however, the result is both unintended and produced without any consciousness of the risk of producing it, it seems too harsh and illogical. * * * "

Notwithstanding defendant's failure to object, the appellate court properly recognized the error as plain error: "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Accordingly, we hold a minor misdemeanor may not serve as the underlying predicate offense for purposes of the involuntary manslaughter statute, R.C. 2903.04(B).

*Judgment affirmed.*

A.W. SWEENEY, WRIGHT, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., and DOUGLAS, J., dissent.