The STATE of Ohio, Appellant,

v.

BROWN, Appellee.■

[Cite as *State v. Brown* (1996), 117 Ohio App.3d 6.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–96–023.

Decided Dec. 13, 1996.

---

*Russell V. Leffler*, Huron County Prosecuting Attorney, for appellant.

*Charles T. Robinson*, for appellee.

8

*Per Curiam.*

This case is before the court on appeal from a judgment of the Huron County Court of Common Pleas that granted defendant-appellee Danny Brown's motion to dismiss an indictment charging him with one count of involuntary manslaughter. Specifically, the lower court ruled that R.C. 2903.04, the statute proscribing involuntary manslaughter, is unconstitutional when the predicate offense is a minor misdemeanor traffic violation. From that judgment, appellant, the state of Ohio, raises the following assignment of error:

"It was error for the trial court to dismiss the indictment on the ground that the involuntary manslaughter statute was unconstitutional."

The relevant facts of this case are as follows. On December 14, 1995, Brown was driving his truck west on Hasbrock Road in Huron County, Ohio. As he approached the intersection of Hasbrock and Ridge Roads, he saw a stop sign which he believed controlled traffic on Ridge Road. He claimed that due to high winds that day, the sign was blowing and appeared to direct traffic on Ridge Road. As he came closer to the intersection, however, he noticed another stop sign on the other side of the intersection and realized that the stop signs controlled traffic on Hasbrock Road. At that time, however, it was too late for him to stop. He entered the intersection and collided with a northbound car driven by Jason Alexander, a high school senior. Alexander died as a result of the accident.

On December 21, 1995, Brown was indicted on one count of involuntary manslaughter in violation of R.C. 2903.04(B) with the predicate offense being Brown's failure to yield at a stop sign, a minor misdemeanor. Subsequently, Brown filed a motion to dismiss the indictment, asserting, *inter alia,* that R.C. 2903.04(B) is unconstitutional as it relates to him in that it violates his right to equal protection under the Ohio and United States Constitutions. In a decision and judgment entry dated May 3, 1996, the trial court granted Brown's motion and dismissed the indictment. Specifically, the trial court held that R.C. 2903.04(B) is unconstitutional when the predicate offense is a minor misdemeanor traffic violation. The state now appeals that judgment and dismissal.

In finding that the involuntary manslaughter statute is unconstitutional, the trial court held that because the involuntary manslaughter and vehicular homicide statutes prohibit identical activity and require identical proof, Brown's right to equal protection is violated because the involuntary manslaughter statute imposes a more severe penalty. The court noted that the vehicular homicide statute, R.C. 2903.07, requires that the defendant be found substantially negligent yet provides for a maximum penalty of up to six months in the county jail and a $1,000 fine. In contrast, the involuntary manslaughter statute requires only a finding of

negligence yet provides for a maximum penalty of up to ten years in prison and a $5,000 fine. The court concluded that there was no rational basis for punishing mere negligent conduct more severely than substantially negligent conduct. The court further concluded that the statutory scheme allows a prosecutor unfettered discretion in deciding under which statute to proceed. The court therefore held R.C. 2903.04(B) unconstitutional when the predicate offense is a minor misdemeanor traffic violation and dismissed the indictment against Brown. We find this ruling to be in error.

In 1993, the Supreme Court of Ohio decided the case of *State v. Collins* (1993), 67 Ohio St.3d 115, 616 N.E.2d 224, which held at the syllabus that "[a] minor misdemeanor may not serve as the underlying predicate offense for purposes of the involuntary manslaughter statute, R.C. 2903.04(B)." At that time, R.C. 2903.04(B) read in part: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor." The court reasoned that the General Assembly did not intend to include minor misdemeanors as a predicate misdemeanor offense for purposes of the crime of involuntary manslaughter. Through the passage of 1994 H.B. No. 236, 145 Ohio Laws, Part III, 5116, 5117, eff. September 29, 1994, the General Assembly amended R.C. 2903.04(B) to specifically include minor misdemeanors. That statute now reads: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." A violation of this section is an aggravated felony of the third degree, R.C. 2903.04(C), and subjects the offender to a maximum sentence of ten years' incarceration and a maximum fine of $5,000. R.C. 2929.11. Brown contends that in light of R.C. 2903.07, R.C. 2903.04(B) violates his right to equal protection when the predicate offense is a minor misdemeanor traffic offense. R.C. 2903.07 criminalizes vehicular homicide and reads under paragraph (A): "No person, while operating or participating in the operation of a motor vehicle * * * shall negligently cause the death of another." The culpable mental state of "negligence" is defined by R.C. 2901.22 as "a substantial lapse from due care." A violation of R.C. 2903.07 is a first-degree misdemeanor. Accordingly, Brown's conduct of causing a death by running a stop sign arguably violated both statutes.

We begin our analysis with the fundamental rule of jurisprudence that "legislative enactments are entitled to a strong presumption of constitutionality." *State v. McDonald* (1987), 31 Ohio St.3d 47, 48, 31 OBR 155, 156, 509 N.E.2d 57, 59. Moreover, "[p]ursuant to its police powers, the General Assembly has the authority to enact laws defining criminal conduct and to prescribe its punishment." *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926, 928. "The limit placed upon governmental action by the Equal Protection Clauses of

the Ohio and United States Constitutions are nearly identical." *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 424, 633 N.E.2d 504, 512. "[A] statutory classification violates the Equal Protection Clause of the Ohio Constitution if it treats similarly situated people differently based upon an illogical and arbitrary basis." *Id.* at 425, 633 N.E.2d at 512. The court below concluded that there was no rational basis for imposing manslaughter punishment on a driver who caused an accident, resulting in the death of another, by violating a minor misdemeanor traffic rule, when a lesser punishment is imposed on one who negligently causes the death of another by operating a vehicle. The obvious difference in the two statutes is, of course, that a minor misdemeanor is a proscribed offense and negligence is not. That is, to prove an involuntary manslaughter, the state must establish that the defendant violated a specific statute and by that violation caused a death. In contrast, to prove vehicular homicide, the state need only prove that the defendant negligently caused a death through the operation of a car. Such negligence will not always also violate the criminal or traffic laws of this state. In enacting the two statutes, the General Assembly has determined that causing a death through the violation of a minor misdemeanor traffic offense is worthy of a more serious penalty than causing a death through the negligent operation of an automobile. We do not find this to be an irrational or arbitrary distinction.

The trial court further concluded that the statutory scheme allows the prosecutor unfettered discretion in determining the statute under which it should proceed when a death is caused by a minor misdemeanor traffic offense. It is well established, however, that "[t]he mere fact that [a defendant's] conduct violates more than one statute does not force the state to prosecute him under the lesser statute." *State v. Cooper* (1990), 66 Ohio App.3d 551, 553, 585 N.E.2d 868, 870. That is:

"Where two statutes proscribe the same criminal conduct, in the absence of proof that the prosecution is based upon an impermissible criterion such as race, religion, or other arbitrary classification, a defendant may be charged and convicted under the statute providing the greater penalty." *State v. Miles* (1983), 8 Ohio App.3d 410, 8 OBR 533, 457 N.E.2d 944, syllabus. See, also, *United States v. Batchelder* (1979), 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755. This principle has been followed by numerous Ohio courts. See *State v. Stanford* (Aug. 30, 1996), Trumbull App. No. 95–T–5358, unreported, 1996 WL 537856, and cases cited therein. Nothing in the record before us suggests that Brown was prosecuted under the more stringent statute on the basis of an impermissible criterion.

■ We therefore conclude that R.C. 2903.04(B) does not violate the Equal Protection Clauses of the Ohio and United States Constitutions when the predicate offense is a minor misdemeanor traffic offense. This is the same conclusion reached by the Ohio Eleventh District Court of Appeals in *Stanford.* The sole assignment of error is well taken.

On consideration whereof, the court finds that substantial justice has not been done to the party complaining, and the judgment of the Huron County Court of Common Pleas is reversed. This cause is remanded for further proceedings not inconsistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GEORGE M. GLASSER and CHARLES D. ABOOD, JJ., concur.

MELVIN L. RESNICK, P.J., dissents.

MELVIN L. RESNICK, Presiding Judge, dissenting.

I must respectfully and regrettably dissent. The legislature has included minor misdemeanors within the ambit of the involuntary manslaughter statute. They have thus created, at the discretion of the prosecutor, a possible extremely greater punishment for the conduct of drivers who commit minor misdemeanors that may result in death as opposed to drivers whose either "reckless" or "substantially negligent" conduct produces the same result. A minor misdemeanor merely requires a "lapse of due care," which is simple negligence—not substantial negligence. Therefore, the state may indict and prosecute a higher-degree offense requiring a lesser degree of fault in a case where it might be more difficult, or even impossible, to prove the inferior offenses of aggravated vehicular homicide or vehicular homicide.

Pursuant to *State v. Wilson* (1979), 58 Ohio St.2d 52, 55–56, 12 O.O.3d 51, 53–54, 388 N.E.2d 745, 748–749, and the perspicacious opinion of the Honorable Earl R. McGimpsey of the Huron County Court of Common Pleas, which I adopt and attach hereto as an Appendix, I would affirm the trial court's decision holding that R.C. 2903.04(B), insofar as it includes minor misdemeanors, is unconstitutional.

Furthermore, I believe the legislature must revisit this statutory scheme and legislate three degrees 'of vehicular homicide, which would preferably include vehicular homicide occurring during the commission of or attempt to commit a minor misdemeanor, a misdemeanor of the first degree or a fourth-degree felony and elevate the other two. Finally, it is my sincere hope that the Ohio Supreme

Court review this matter in light of *Wilson* and the reasoning underlying both this dissent and the trial court's opinion in order to give some direction to the courts of Ohio.

## APPENDIX

### May 3, 1996

## IN THE COMMON PLEAS COURT OF HURON COUNTY, OHIO

THE STATE OF OHIO

vs.

BROWN

EARL R. McGIMPSEY, Judge.

This matter is before the court on defendant's motion to dismiss the indictment pursuant to Crim.R. 12(B) and 48(B) on the ground that R.C. 2903.04(B), the involuntary manslaughter law, violates the Equal Protection Clauses of the federal and state Constitutions.

The evidence adduced at the hearing thereon established that on December 14, 1995, the defendant failed to stop at a stop sign for westbound traffic on Hasbrock Road in rural Huron County, thereby colliding with a vehicle that was northbound on the intersecting Ridge Road, killing its driver. The roadway was wet, but it was not raining. It was daylight. The shape of the stop sign was visible and discernable to westbound traffic on Hasbrock Road from a distance of eight hundred fourteen feet, although Ridge Road itself may not have been visible because of a dip in Hasbrock Road, as it approaches Ridge Road from the east where defendant was traveling.

The defendant, after being advised of his *Miranda* rights, told the investigating trooper that he had observed the stop sign, but believed it was directed to southbound Ridge Road traffic until he realized it was directed to his direction of travel, and at that point it was too late for him to stop. In conversation with the trooper, the defendant stated that the wind was whipping the sign. There was evidence that at the approximate time of the accident the wind at the closest weather reporting station, approximately forty miles away, was 16 m.p.h., gusting to 23 m.p.h. from the southwest. The trooper testified, however, that when he checked the sign, it was secure and properly aligned for westbound Hasbrock Road traffic. The trooper testified that there was insufficient evidence to determine the speeds of the vehicles at impact and he had no evidence that the defendant was speeding. The trooper testified that the only traffic violation committed by the defendant was failure to stop at a stop sign in violation of R.C. 4511.43(A), a minor misdemeanor. He testified that there was no evidence of alcohol or drug use by defendant and there were no aggravating circumstances that contributed to the accident.

The question raised by this motion was recently addressed by this court in *State v. Hoyt*, case No. CRI 95–608. Portions of that decision are reproduced here without acknowledgement.

The legal issue raised by the defendant's motion is: Does the involuntary manslaughter statute violate the Equal Protection Clauses of the United States and Ohio Constitutions when it permits conviction of an aggravated third-degree felony, punishable by up to ten years in prison, to be based upon the violation of a minor misdemeanor traffic statute when the same violation would not be a sufficient basis upon which to convict a person of vehicular homicide, a first-degree misdemeanor, punishable by up to a maximum of six months in the county jail?

In this case defendant ran a stop sign, a minor misdemeanor traffic offense. The state chose to prosecute defendant for involuntary manslaughter. That charge requires only that the state prove that the defendant committed a minor misdemeanor traffic violation which constitutes negligence. The state chose not to prosecute defendant on charges of vehicular homicide, which would have required additional proof that defendant's negligence was substantial, or aggravated vehicular homicide, which would have required that the state prove that the defendant was reckless. Like the *Hoyt* case, this case must, therefore, be considered in the same light as whenever any person by the violation of a minor misdemeanor traffic offense, without aggravating circumstances, causes an accident that results in death.

Since it is difficult to imagine any vehicular accident that results in death not having been caused by the violation of a minor misdemeanor traffic law, the implications of this decision reach far beyond the defendant. If it is constitutional to convict him of an aggravated third-degree felony and send him to prison for up to ten years, then it is constitutional to convict and imprison up to ten years any citizen who causes the death of another in a traffic accident even though that citizen may be less negligent than a citizen whose more egregious conduct, amounting to "substantial" negligence, results in a conviction of vehicular homicide and who faces a maximum penalty of six months in the county jail. Therein lies the constitutional dilemma which our forefathers addressed by the inclusion of the fairness principle embodied in the Equal Protection Clauses of the United States and Ohio Constitutions. The laws of our state must be capable of being applied and must be applied in a way that treats citizens in like circumstances equally.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o state shall * * * deny any person within its

jurisdiction equal protection of the laws." The Ohio Constitution provides in Article I, Section 2 that "Government is instituted for [the people's] equal protection and benefit." In order to show a violation of these Equal Protection Clauses the defendant must show that the statutory scheme creates an unconstitutional classification.

In examining a statutory classification, the court must first look to whether a suspect class or a fundamental right is involved. *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 198–199, 72 O.O.2d 112, 113–114, 331 N.E.2d 723, 725–726. If no suspect class or fundamental right is involved, the statutory classification must stand up to a rational-basis level of scrutiny. *Granzow v. Montgomery Cty. Bur. of Support* (1990), 54 Ohio St.3d 35, 37, 560 N.E.2d 1307, 1309–1310. Under the rational-basis test, a classification will not violate the Equal Protection Clauses if it bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182–183. But if similarly situated people are treated differently in an illogical or arbitrary manner, the statutory classification will be held to violate the Equal Protection Clauses. *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 362, 653 N.E.2d 212, 214.

The classification of motor vehicle operator, unlike classifications based on race or gender, is not a suspect class and the operation of a motor vehicle is a privilege, not a fundamental right.[1] Thus, the rational-basis test is the test that must be used to determine whether the involuntary manslaughter statute, as it applies to the violation of minor misdemeanor motor vehicle laws, violates the Equal Protection Clauses.

This issue has not been previously decided in Ohio. In the past the appropriateness of charging involuntary manslaughter based on a minor misdemeanor traffic violation was framed in the context of legislative intent.

The first area of challenge was the question of whether the legislature intended to include minor misdemeanor traffic offenses within the definition of a misdemeanor as that classification was used in R.C. 2903.04(B). A conflict arose in the various courts of appeal, which was resolved by the Supreme Court in *State v. Collins* (1993), 67 Ohio St.3d 115, 616 N.E.2d 224, when it held that "a minor misdemeanor may not serve as the underlying predicate offense for purposes of the involuntary manslaughter statute, R.C. § 2903.04(B)." *Id.* at 118, 616 N.E.2d

---

1. It could certainly be argued that the fundamental right at stake is liberty, since the involuntary manslaughter statute does not sanction the right to drive but rather imposes a loss of liberty. In that case a level of scrutiny higher than the rational basis test of the statute would be required.

at 226. In 1994, perhaps in reaction to the *Collins* decision, the legislature amended R.C. 2903.04(B) to include minor misdemeanors as a basis for involuntary manslaughter.

The second area of challenge arose over the question of whether the legislature intended to permit prosecution of persons involved in vehicular fatalities for manslaughter despite more specific statutes for aggravated vehicular homicide and vehicular homicide. Again, a conflict arose in the various courts of appeals and was finally put to rest in *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134, wherein the Ohio Supreme Court held that such prosecution was permissible. The court did not, however, specifically address an Equal Protection challenge. *Chippendale* is, therefore, not determinative of the issue before this court.

Both the United States and the Ohio Supreme Courts have stated that the Equal Protection Clauses are not violated simply because a person may be charged under one or more criminal statutes. *United States v. Batchelder* (1979), 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764–765; *State v. Wilson* (1979), 58 Ohio St.2d 52, 55, 12 O.O.3d 51, 53–54, 388 N.E.2d 745, 748. Both courts are very protective of prosecutorial discretion. The United States Supreme Court and the Ohio Supreme Court, however, came to very different conclusions on whether a person could be subjected to a more severe penalty under separate statutes proscribing identical conduct. The United States Supreme Court in *Batchelder* held that a defendant could be convicted and sentenced under a statute that imposed a more severe penalty for the same conduct for which a different statute imposed a lesser penalty. But the Ohio Supreme Court noted that where statutes prohibit identical activity, require identical proof and yet impose different penalties, sentencing under the statute with the higher penalty violates the Equal Protection Clause. *State v. Wilson,* supra, 58 Ohio St.2d at 55–56, 12 O.O.3d at 53–54, 388 N.E.2d at 748–749. The court held in *Wilson* that the test is " 'whether, if the defendant is charged with the elevated crime, the state has the burden of proving an additional element beyond that required by the lesser offense.' " *Id.* at 55, 12 O.O.3d at 54, 388 N.E.2d at 748, quoting the court of appeals. The decisions in *Batchelder* and *Wilson* were announced within months of each other and, although *Batchelder* was announced after *Wilson, Wilson* continues to be controlling law in Ohio. *State v. McDonald* (1987), 31 Ohio St.3d 47, 50, 31 OBR 155, 157, 509 N.E.2d 57, 60; *State v. Gilham* (1988), 48 Ohio App.3d 293, 294, 549 N.E.2d 555, 556–557; *State v. Shields* (1984), 15 Ohio App.3d 112, 118, 15 OBR 202, 208–209, 472 N.E.2d 1110, 1117–1118. The Supreme Court of Ohio has not chosen to overrule *Wilson* and adopt *Batchelder.* Until it does so, an Ohio trial court is obligated to follow *Wilson.*

Applying the *Wilson* test to R.C. 2903.04(B), it is clear that the legislative scheme violates the Equal Protection Clauses. The statute, instead of requiring the state to prove an additional element for the elevated crime of involuntary manslaughter, actually eliminates one of the elements required to establish the lesser offense of vehicular homicide because to prove involuntary manslaughter all the state has to prove is the violation of a minor misdemeanor traffic rule, which is by law a lapse of due care, *i.e.,* negligence, but to prove vehicular homicide the state must additionally prove that the violation constituted a substantial lack of due care, *i.e.,* substantial negligence. The statutory scheme on its face, therefore, violates the Equal Protection Clauses.

In analyzing the equal protection issue, the court must look at the statutory classifications to determine whether the law discriminates against a class and, if it does, whether there is a rational basis for the discrimination that can pass muster under the Equal Protection Clauses. In the case of the involuntary manslaughter statute where the predicate offense is a minor misdemeanor traffic violation there are two different ways to classify persons who are affected by the law.

The first classification is based on all drivers who cause vehicular accidents by violation of a minor misdemeanor traffic rule, without aggravating conduct that makes their violation a substantial lapse of due care. Is there a rational basis to differentiate between those who cause the death of a person and are subjected to up to ten years in prison and a $5,000 fine for the first offense and those who only cause injury, no matter how grievous that injury may be, and are subject only to a maximum fine of $100? One does not have to look far for examples. Two cars skidding on the same patch of ice may have accidents resulting in death or injury depending only on the fortuity of the circumstances and not the conduct of the drivers, which for all practical purposes may have been the same. Certainly, citizens in this county are familiar with certain intersections that have high accident rates. Often accidents resulting from the same driver conduct, *e.g.,* stopping, looking, failing to see a vehicle in plain sight and entering the intersection, cause accidents that result in injury or death, depending only on the fortuity of the circumstances. Should a mother, who enters an intersection, failing to yield the right of way, and causing the death of her children, be further punished by imprisonment up to ten years when another mother, who did the same thing, causing only injury to her children, is only subject to a $100 fine?

While the death of a person is certainly a basis to distinguish between accidents causing injury and accidents causing death, the Supreme Court of Ohio has observed that it is not a logical (*i.e.,* rational) basis:

"We also find persuasive Judge Cacioppo's quote from LaFave & Scott, Criminal Law (2 Ed.1986) 683, Section 7.13: '* * * *There is no logical reason for*

*inflicting manslaughter punishment on one who unintentionally kills another simply because he is committing a traffic violation, unless it makes sense to punish the one-in-a-thousand traffic violation, which by bad luck produces an unexpected death, far more severely than the nine hundred and ninety-nine violations which happily do not produce any such devastating result.* * * * It is true that, in the case of crimes defined in terms of bad results, it is often something of an accident whether the specified result occurs or not. Where one seriously wounds another by shooting at him with intent to kill, or severely but unintentionally injures him by reckless driving, chance often takes a hand in deciding whether the victim dies or recovers, and thus whether the defendant receives a greater or lesser punishment. If the bad result which happens is actually intended, or if it is recklessly produced (especially by one conscious of the risk), it does not seem too harsh to make the severity of his punishment depend somewhat on the actual result, however accidental. Where, however, the result is both unintended and produced without any consciousness of the risk of producing it, it seems too harsh and illogical.'" (Emphasis added.) *State v. Collins, supra,* 67 Ohio St.3d at 117, 616 N.E.2d at 226.

Thus, while the Supreme Court has not directly decided this issue, its most recent pronouncement suggests that death alone would not be a rational basis for imposing manslaughter punishment on a driver who caused an accident, resulting in the death of another, by violating a minor misdemeanor traffic rule.

The second classification to be considered is all drivers who cause the death of another in a vehicular accident by the violation of a minor misdemeanor traffic rule. The Ohio statutory scheme differentiates between three classes of such drivers: (1) drivers who, in violating a minor misdemeanor traffic rule, are *reckless* (aggravated vehicular homicide—an aggravated third-degree felony punishable for first time offenders by up to ten years in prison and a fine up to $5,000); (2) drivers who, in violating a minor misdemeanor traffic rule, are *substantially negligent*[2] (vehicular homicide—a first-degree misdemeanor punishable by up to 6 months in the county jail and a $1,000 fine); and (3) drivers who, by simply violating a minor misdemeanor traffic rule, are *negligent*[3]

---

2. Negligence is a lapse from due care; but to establish the necessary *mens rea* for a criminal offense, the lapse from due care must be substantial. R.C. 2901.22(D). Thus, violation of R.C. 2903.07, vehicular homicide, which requires that the state prove that the defendant negligently caused the death of another, actually requires that the state prove that the defendant's negligence was substantial.

3. Violation of these traffic statutes, or their comparable city ordinances, is either negligence or negligence *per se. Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d

(involuntary manslaughter punishable for first time offenders by up to ten years in prison and a $5,000 fine).

Certainly, there is a rational basis for punishing more severely the reckless conduct required as an element of aggravated vehicular homicide than the substantially negligent conduct required as an element of vehicular homicide. Although Ohio law does not provide for it, a statutory scheme that punishes substantially negligent conduct more severely than mere negligent conduct would most likely be constitutional. For example, the legislature could have adopted a vehicular manslaughter offense predicated on mere negligence and made it punishable at a lesser level of misdemeanor than vehicular homicide. But there is no rational basis for punishing mere *negligent* conduct more severely than *substantially negligent* conduct. This clearly does not meet the requirement of *State v. Wilson, supra,* that the statute imposing the more severe punishment contain an additional element beyond that required by the statute imposing the lesser punishment.[4]

Ohio's involuntary manslaughter statute allows a prosecutor who does not have the evidence to prosecute a first-degree misdemeanor because he cannot prove substantial negligence to prosecute an aggravated third-degree felony simply because he can show the violation of a minor misdemeanor traffic rule. Instead of requiring the same elements or an additional element be proved, the involuntary manslaughter statute allows a more severe penalty to be imposed for conduct that is less culpable. It is this type of statutory scheme that the framers of our Constitutions sought to prohibit when they said that government is instituted for the equal protection of all citizens and that no state shall deny any person the equal protection of the laws.

Surely, in cases where the death of another is caused by a vehicular traffic accident, the state can have no legitimate interest in punishing more severely conduct that is a mere violation of a traffic law than conduct that is a substantial violation of a traffic law. The court, therefore, concludes that R.C. 2903.04(B) is unconstitutional when the predicate offense is a minor misdemeanor traffic violation.

---

440. Such a violation is a sufficient predicate under R.C. 2903.04(B) for a jury to find defendant guilty of involuntary manslaughter.

4. This does not even meet the standard in *United States v. Batchelder, supra,* which allows more severe punishment to be imposed where two statutes with different penalties proscribe the same conduct. At least in that situation the state has to prove the same elements, rather than fewer elements as is the case with Ohio's involuntary manslaughter statute.