This is an appeal from the judgment of the Lucas County Court of Common Pleas which denied appellant's motion to withdraw his guilty plea. For the following reasons, we affirm the decision of the trial court.
On May 23, 1997, appellant, Brent Lutman, was indicted on two counts of involuntary manslaughter, each a felony of the third degree, in violation of R.C. 2903.04(B), "as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." On September 24, 1997, appellant entered a plea of no contest to two counts of attempted involuntary manslaughter, pursuant to R.C. 2923.02 and 2903.04(B), each a felony of the fourth degree. Appellant's alleged misdemeanor violation, upon which his conviction of involuntary manslaughter was predicated, was speeding, a minor misdemeanor traffic offense.[1] The trial court accepted appellant's plea and entered a finding of guilty.
On November 10, 1997, appellant was present in court for sentencing. In considering the gravity of appellant's crime, the trial court stated as follows:
 "* * * it is clear [defendant] was speeding. How fast he was going is, I guess, a question that is open to dispute. While the defendant did not intend for this accident to happen or for anyone to die, he did intend to operate his car in a manner that he knew was beyond the speed limit, and he should have known that a collision in that circumstance was not unforeseeable.
 "He should have known that speeding is dangerous, and it can be fatal. I think it's important that we all remember driving an automobile is an awesome responsibility and that a car driven carefully — that is not driven carefully and is not driven with due care and is driven recklessly is a deadly weapon, and unfortunately, we have proof of it here today."
The trial court sentenced appellant to five years of community control with the following conditions: (1) first twelve months to be served at the Corrections Center of Northwest Ohio ("CCNO"); (2) twelve months of electronic monitoring, following the CCNO sentence; (3) seek and maintain employment upon release from CCNO; (4) license suspension for three years; (5) one hundred hours of community service in the area of driver education; and (6) no traffic violations during the term of his community control.
On December 8, 1997, with new counsel, appellant filed a "MOTION TO DISMISS INDICTMENT PURSUANT TO CRIMINAL RULE 48 OR TO ARREST JUDGMENTS" and an "ALTERNATIVE MOTION TO WITHDRAW NO CONTEST PLEAS." In appellant's motion to dismiss the indictment, appellant asserted that the indictment against him violated theEighth Amendment to the United States Constitution and Section 9, ArticleI, Ohio Constitution, by subjecting appellant to cruel and unusual punishment and that appellant's rights to due process and equal protection were also violated. Alternatively, appellant moved the trial court "to arrest the judgments of conviction * * * for the reason that the indictment failed to state an offense, thereby rendering it void ab initio, which in turn divested the court of subject matter jurisdiction." Relying on the decisions in Statev. Campbell (1997), 177 Ohio App.3d 762,[2] and State v. Shy
(June 30, 1997), Pike App. No. 96 CA 587, unreported, appellant argued that an indictment for involuntary manslaughter predicated on a minor misdemeanor traffic violation subjected a defendant to cruel and unusual punishment. In the event that the trial court did not dismiss the indictment, appellant filed a motion to withdraw his no contest plea. In particular, appellant asserted that had he been aware of the decisions in Campbell andShy, he would have challenged the constitutionality of the indictment. Appellant argued that he should be permitted to withdraw his plea in order to correct a manifest injustice, i.e., "constitutionally infirm convictions induced by uninformed pleas."
A hearing was held on appellant's motions, wherein appellant's counsel at the time of his plea, Jerome Phillips, was called to testify. Attorney Phillips testified that the predicate minor misdemeanor traffic violation supporting appellant's convictions of involuntary manslaughter was "speed." Phillips testified that prior to the no contest pleas, he was not familiar with eitherCampbell or Shy, supra. When asked what advice he gave appellant concerning the plea recommendation, Phillips testified that based on his understanding of State v. Brown (1996), 117 Ohio App.3d 6, out of the Sixth District Court of Appeals, he encouraged appellant to accept the recommendation. Phillips was then asked if he would have given the same advice to appellant had he been aware ofCampbell and Shy. Phillips responded,
 "Not at that time, with a caveat I would not have done that until I would have filed a motion to dismiss the indictment, had the matter thoroughly heard by this court or whatever court would hear the matter, and then upon a decision, if it was an unfavorable decision, I might have considered the no contest plea with the purpose of taking the matter to a higher court for a decision."
Appellant's counsel then asked Phillips, "As an officer of the Court, Mr. Phillips, as you sit here today, can you state to the Court that the pleas which Brent entered on September the 24th of 1997 were knowing, intelligent and voluntary pleas?" Phillips responded, "no," and stated, "Because, obviously, I did not have knowledge of the two cases from the other districts that we are discussing today until you brought them to my attention, and I did not give him advice regarding those cases, and I did not file what I considered the appropriate motion in this case to bring those cases to this Court's attention."
The trial court rendered its decision from the bench on appellant's motions. Relying on State v. Wozniak (1961), 172 Ohio St. 517, the trial court found that a judgment of conviction binds a defendant from raising arguments that collaterally attack the constitutionality of an indictment. Furthermore, the trial court held that when a court has jurisdiction over the person and the subject matter, an indictment alleged to be defective because it fails to charge an offense, is merely voidable, not void. As such, even if the indictment had failed to charge an offense, because the trial court had personal and subject matter jurisdiction, the indictment was voidable, but not void ab initio. Accordingly, the trial court found that, pursuant to Crim.R. 12 and R.C. 2941.29, the motion to dismiss due to a defective indictment had to be raised prior to trial. Appellant's failure to do so, the court found, constituted a waiver of appellant's right to raise such an argument. With respect to appellant's motion to arrest judgment, the trial court found that it had to be raised within fourteen days after the finding of guilty. Because appellant's motions to dismiss and arrest judgment were untimely filed, the trial court denied both motions.
The trial court also denied appellant's motion to withdraw his pleas of no contest. The trial court found that such a motion only could be granted in rare circumstances which create a manifest injustice. As such, the trial court found that it had to consider the constitutionality of the statute as applied in the indictment to determine whether a manifest injustice had occurred. The trial court found that this court, in Brown,117 Ohio App.3d 6, had already determined that R.C. 2903.04(B) did not violate the Equal Protection Clause when the predicate offense was a minor misdemeanor offense. Relying on Shy, supra, the trial court also found that there was no violation of due process.
The trial court next considered whether R.C. 2903.04(B) violated the Eighth Amendment regarding cruel and unusual punishment when the predicate offense was a minor misdemeanor offense. The trial court found that Campbell and Shy were not controlling or persuasive. Rather, the trial court found that the penalty in this case was not so greatly disproportionate as to shock the sense of the community. In support of its finding, the trial court cited State v. Stanford (Aug. 30, 1996), Trumbull App. No. 95-T-5358, unreported, and on our ruling in Brown, regarding the equal protection issue. The trial court stated that based on our ruling in Brown, we would likely find that R.C. 2903.04 did not impose cruel and unusual punishment. Insofar as the trial court did not find there to be a constitutional violation, the court held that no manifest injustice existed which would require the court to allow appellant to withdraw his no contest plea.
The trial court next considered Phillips' statement that he would have filed a motion to dismiss had he been aware of theCampbell and Shy cases. The trial court found that appellant was not prejudiced by his counsel's failure to file a motion to dismiss because, based upon the court's research, it would have denied the motion.
Based on the foregoing analysis, the trial court found all of appellant's motions not well-taken. Appellant timely appealed the decision of the trial court and raises the following assignments of error:
"ASSIGNMENT OF ERROR I
 "I. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT WHEN IT REFUSED TO ALLOW HIM TO WITHDRAW HIS PLEAS OF NO CONTEST TO AN UNCONSTITUTIONALLY-DRAWN INDICTMENT.
"ASSIGNMENT OF ERROR II
 "II. THE APPELLANT WAS NOT AFFORDED THE EFFECTIVE ASSISTANCE OF COUNSEL IN CONJUNCTION WITH HIS ENTERING PLEAS OF NO CONTEST TO AN UNCONSTITUTIONALLY-DRAWN INDICTMENT.
"ASSIGNMENT OF ERROR III
 "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT REFUSED TO DISMISS THE INDICTMENT WHICH CHARGED HIM WITH INVOLUNTARY MANSLAUGHTER PREDICATED ON THE COMMISSION OF A STRICT LIABILITY MINOR MISDEMEANOR TRAFFIC VIOLATION, AS THE APPLICATION OF THE INVOLUNTARY MANSLAUGHTER STATUTE UNDER SUCH CIRCUMSTANCES SUBJECTED APPELLANT TO CRUEL AND UNUSUAL PUNISHMENT.
"ASSIGNMENT OF ERROR IV
 "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT REFUSED TO DISMISS THE INDICTMENT WHICH CHARGED HIM WITH INVOLUNTARY MANSLAUGHTER PREDICATED ON THE COMMISSION OF A STRICT LIABILITY MINOR MISDEMEANOR TRAFFIC VIOLATION AND WHICH DID NOT ALLEGE A CULPABLE MENTAL STATE, AS THE INDICTMENT UNDER SUCH CIRCUMSTANCES FAILED TO STATE AN OFFENSE AND WAS THEREFORE VOID AB INITIO.
"ASSIGNMENT OF ERROR V
 "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT REFUSED TO DISMISS THE INDICTMENT WHICH CHARGED HIM WITH INVOLUNTARY MANSLAUGHTER PREDICATED ON THE COMMISSION OF A STRICT LIABILITY MINOR MISDEMEANOR TRAFFIC VIOLATION, AS THE APPLICATION OF THE INVOLUNTARY MANSLAUGHTER STATUTE UNDER SUCH CIRCUMSTANCES DEPRIVED THE APPELLANT OF HIS RIGHTS TO EQUAL PROTECTION."
Central to the issue on appeal is whether R.C. 2903.04(B) as applied to a minor misdemeanor traffic offense which results in a vehicular homicide violates the Eighth Amendment to the United States Constitution and Section 9, Article I, Ohio Constitution. Accordingly, we will begin our analysis by addressing that issue, before considering the merits of appellant's assignments of error.
The involuntary manslaughter statute, R.C. 2903.04(B) currently provides:
 "(B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor."
Whoever violates this section is guilty of involuntary manslaughter, a felony of the third degree. R.C. 2903.04(C).
Prior to September 29, 1994, the involuntary manslaughter statute did not include "minor misdemeanor" as a predicate for purposes of the crime of involuntary manslaughter. When considering the old statute, based on statutory construction principles, the Ohio Supreme Court found that minor misdemeanors are distinguished from other misdemeanors and, therefore, held that it could not be presumed that the General Assembly intended that "misdemeanors" be merged with "minor misdemeanors."State v. Collins (1993), 67 Ohio St.3d 115. The court went on to state that although most traffic offenses were minor misdemeanors, "this fact alone does not indicate that the General Assembly considered all traffic offenses to be equally culpable." Id. at 117. In Collins, the court found that it was plain error for the defendant to be tried and convicted of involuntary manslaughter with a minor misdemeanor as the predicate for purposes of the crime of involuntary manslaughter. Id. at 118.
After Collins, R.C. 2903.04(B) was amended to specifically include "minor misdemeanor" as a predicate offense. Defendants in Ohio raised arguments that the amended statute violated their rights to equal protection and their rights to protection against cruel and unusual punishment. Although appellate courts have uniformly held that R.C. 2903.04(B) presents no equal protection problems,[3] the appellate decisions considering the issue of cruel and unusual punishment have been diverse.
Legislative enactments are entitled to a strong presumption of constitutionality. State v. Collier (1991), 62 Ohio St.3d 267,269. " This rule requires that any reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of the General Assembly's power to enact the law." State v.McDonald (1987), 31 Ohio St.3d 47, 48. In order for a punishment to violate the constitutional prohibition against cruel and unusual punishments, the penalty must be "so greatly disproportionate to the offense as to shock the sense of justice of the community."State v. Chaffin (1972), 30 Ohio St.2d 13, paragraph three of the syllabus. See, also, McDougle v. Maxwell (1964), 1 Ohio St.2d 68,70 (`Cases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.")
The Eleventh and Twelfth Appellate Districts have held that the punishment for involuntary manslaughter predicated on a minor misdemeanor was not so disproportionate to sentences for "more serious" crimes as to shock the community. State v. Garland
(1996), 116 Ohio App.3d 461, discretionary appeal not allowed, (1997), 78 Ohio St.3d 1451; State v. Carper (March 1, 1999), Fayette App. No. CA98-06-009, unreported; and State v. Stanford
(Aug. 30, 1996), Trumbull App. No. 95-T-5358, unreported.
_________ On the other hand, the Second, Fourth, and Fifth Appellate Districts have held that a charge of involuntary manslaughter predicated on a strict liability minor misdemeanor is unconstitutional. State v. Campbell (1997), 177 Ohio App.3d 762; State v. Weitbrecht (July 31, 1998), Holmes App. No. 97 CA 588, unreported; State v. Shy (June 30, 1997), Pike App. No. 96 CA 587, unreported. The courts reasoned that a strict liability traffic offense requires no proof of a culpable mental state. As such, a defendant with no culpable mental state would be punished more severely than an individual charged with negligent homicide or vehicular homicide which require some degree of culpability.Id. As such, in Weitbrecht, the court held "* * * when there is no evidence of criminal culpability but merely bad driving or a simple lapse from good driving judgment, the punishment of the involuntary manslaughter statute is grossly disproportionate to the underlying minor misdemeanor traffic offenses and it shocks the sense of justice of the community." Additionally, Weitbrecht
held, "It is quite another issue when there is initial bad driving (criminal negligence or recklessness) or a violation of a misdemeanor where there is a possibility of imprisonment." However, we note that Campbell held that before a culpable mental state can be established, the indictment must set forth a particular mental culpability and failure to do so renders the indictment constitutionally deficient. Campbell at 772-773. Recognizing that there was a split in the appellate courts, the Ohio Supreme Court accepted the issue of whether R.C. 2903.04(B) as applied to a minor misdemeanor traffic offense which results in a vehicular homicide violates the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution. See State v. Weitbrecht (1998), 84 Ohio St.3d 1410. The matter is currently pending before the Ohio Supreme Court.[4]
We disagree that involuntary manslaughter fails to specify any degree of culpability. The degree of culpability necessary for conviction of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence. See State v. Losey (1985), 23 Ohio App.3d 93,97. Hence, the United States Court of Appeals for the Sixth Circuit held that "* * * the culpable mental state requisite to a conviction of involuntary manslaughter is the culpable mental state of the underlying misdemeanor." Stanley v. Turner (1993),6 F.3d 399, 402. Citing Morissette v. United States (1952),342 U.S. 246, 253-254, the Stanley court recognized that "offenses designed to protect public health and safety need not contain `intent' as a necessary element." Stanley at 403. Nevertheless, violation of the duty to obey the traffic safety laws is usually considered negligence per se. Stanley at 404, citing Crawford v.State (1991), 57 Ohio St.3d 184, 191 (Wright, J., dissenting) andMapes v. Opper (1983), 9 Ohio App.3d 140, 142. Accordingly,Stanley held that a defendant who violates a misdemeanor traffic offense does so "with a recognized criminal intent, i.e., negligence." Stanley at 404.
Although the decision in Stanley concerned a due process argument and although the opinion and the cases cited therein were rendered prior to the amendment of R.C. 2903.04(B), we find the analysis to be persuasive. At a minimum, it is negligence for a defendant to violate traffic safety laws. As such, we disagree that an involuntary manslaughter conviction carries a lesser culpable mental state than similar offenses, such as negligent homicide or vehicular manslaughter. Accordingly, although a greater punishment is imposed for involuntary manslaughter than negligent homicide or vehicular manslaughter, we agree with the Eleventh and Twelfth Appellate Districts that the punishment for involuntary manslaughter predicated on a minor misdemeanor is not so disproportionate as to shock the sense of justice of the community. See Garland; Carper; and Stanford, supra.
Having found that violation of R.C. 2903.04(B) predicated upon a minor misdemeanor does not violate appellant's right to be protected from cruel and unusual punishment, we now turn to appellant's assignments of error.
Appellant asserts in his first and second assignments of error that the trial court abused its discretion in refusing to allow him to withdraw his pleas of no contest to an "unconstitutionally-drawn" indictment. Appellant asserts that he should have been permitted to withdraw his plea because he was prejudiced and suffered a manifest injustice by his counsel's failure to preserve the constitutional issues for appeal and that his pleas were not knowingly, intelligently, and voluntarily made because they were induced by the ineffective assistance of counsel.
Crim.R. 32.1 governs withdrawal of guilty pleas and provides:
 "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
Accordingly, a court may set aside a judgment of conviction and permit a defendant to withdraw a guilty plea after imposition of sentence only to correct a manifest injustice. Crim.R. 32.1 andState v. Smith (1977), 49 Ohio St.2d 261, paragraph one of the syllabus. A trial court is given broad discretion to determine a motion to withdraw a guilty plea and its decision should not be overturned absent an abuse of its discretion. Id. at paragraph two of the syllabus; and State v. Blatnik (1984), 17 Ohio App.3d 201,202. Accordingly, because appellant filed his motion to withdraw his plea after his sentence had been imposed, appellant must establish that there existed some manifest injustice that would have warranted the trial court setting aside his judgment of conviction. See Crim.R. 32.1.
Additionally, "a defendant who pleads guilty upon the advice of counsel `may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson (1970), 397 U.S. 759].'" Hill v. Lockhart
(1985), 474 U.S. 52, 56-57, citing Tollett v. Henderson (1973),411 U.S. 258, 267. The United States Supreme Court set forth a two-part standard for evaluating claims of ineffective assistance of counsel: (1) appellant must establish that his counsel's representation fell below an objective standard of reasonableness; and (2) appellant must establish that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v.Washington (1984), 466 U.S. 668, 687-688, and 694. The United States Supreme Court also applied this two-part standard to claims arising out of the plea process, and held:
 "We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, supra, and McMann v. Richardson, supra. The second, or `prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Emphasis added.) Hill at 58-59.
We appreciate the candidness of Attorney Phillips regarding his lack of knowledge concerning the Campbell and Shy cases; however, as discussed supra, we find that a minor misdemeanor traffic offense is a permissible predicate for establishing involuntary manslaughter. Accordingly, we find that appellant suffered no prejudice from his counsel's failure to file a motion to dismiss prior to the taking of appellant's plea. Having suffered no prejudice, appellant was not denied the effective assistance of counsel. See Strickland, supra.
Moreover, with respect to the voluntary and intelligent character of his plea, we note that appellant never asserted that he would have tried the matter had he known ofCampbell and Shy. See Hill, supra. Rather, it was suggested by Phillips that he would not have recommended the plea agreement to appellant until after filing an appropriate motion to dismiss. Accordingly, we find that appellant failed to establish that the outcome of the proceedings would have been different. SeeStrickland, supra, and Hill, supra. Because appellant was not denied the effective assistance of counsel, we find that appellant failed to establish that his plea was not knowingly, voluntarily, and intelligently entered.
Accordingly, we find that appellant suffered no manifest injustice and, therefore, the trial court did not abuse its discretion in refusing to allow appellant to withdraw his plea. Appellant's first and second assignments of error are therefore found not well-taken.
Appellant alleged in his third assignment of error that the trial court erred in refusing to dismiss the indictment which charged appellant with involuntary manslaughter predicated on the commission of a strict liability minor misdemeanor traffic violation. Based on our foregoing discussion, we find appellant's third assignment of error not well-taken. SeeGarland; Carper; and Stanford, supra.
Appellant asserts in his fourth assignment of error that the trial court erred in refusing to dismiss the indictment which failed to charge appellant with an offense, insofar as no degree of culpability was stated. Based on our prior discussion, we find that no culpable mental state was required, or at the very least, appellant's alleged traffic violation was negligenceper se. See Stanley, supra. Accordingly, we find appellant's fourth assignment of error not well-taken.
Appellant asserts in his fifth assignment of error that the trial court erred when it refused to dismiss appellant's indictment which deprived appellant of his right to equal protection. Based on our opinion in Brown, 117 Ohio App.3d 6, and the opinions in Campbell; Shy; and Stanford, supra, we find appellant's fifth assignment of error not well-taken.
On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J._____ _______________________________ JUDGE
Richard W. Knepper, J.______ _______________________________ JUDGE
Mark L. Pietrykowski, J.____ _______________________________ JUDGE CONCUR.
[1] There was some suggestion from the victims' families and defense counsel that appellant was traveling between fifty-five and sixty-five miles per hour in a thirty-five mile per hour zone; however, appellant entered a plea before a bill of particulars could be filed and this evidence was not put on the record by the state.
[2] At the time appellant filed his motion, Campbell was not yet a reported case.
[3] See State v. Campbell (1997), 177 Ohio App.3d 762; State v.Brown (1996), 117 Ohio App.3d 6; State v. Shy (June 30, 1997), Pike App. No. 96 CA 587, unreported; State v. Stanford (Aug. 30, 1996), Trumbull App. No. 95-T-5358, unreported.
[4] Oral arguments were held May 26, 1999.