**[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 10.]**

THE STATE OF OHIO, APPELLANT, *v*. FLONTEK, APPELLEE.

[Cite as *State v. Flontek*, 1998-Ohio-362.]

*Criminal law—Offenses against the family—Nonsupport of dependents—R.C. 2919.21(A)(3) requires adult child to provide adequate financial support for dependent parent, when—Term "support" as used in R.C. 2919.21(A)(3) does not encompass nonfinancial support considerations.*

R.C. 2919.21(A)(3) requires an adult child to provide adequate financial support for his or her dependent parent if the parent is in need of financial assistance and the adult child has the financial means to provide such support. The term "support," as used in R.C. 2919.21(A)(3), does not encompass nonfinancial support considerations.

(No. 97-967—Submitted March 4, 1998—Decided May 20, 1998.)

CERTIFIED by the Court of Appeals for Lorain County, No. 96CA6392.

———————————

{¶ 1} Appellee, Lenore F. Flontek, and her mother, Rosella Flontek, lived together in a home located on Lakeview Avenue in Lorain, Ohio. Rosella died on March 26, 1995. Appellee was an only child, she has never married, and she has resided at the Lakeview Avenue residence since the age of four. At the time of her mother's death, it appears that appellee was fifty-one years of age.

{¶ 2} In 1990 or 1991, appellee was laid off from her job at an advertising agency. At the time, appellee had approximately $14,000 in her savings account, $55,000 in an Individual Retirement Account, and a "couple thousand" dollars in her checking account. Appellee and her mother also owned a certificate of deposit worth approximately $10,000. Appellee depleted a large portion of her savings to make substantial improvements to her mother's home. Appellee had new doors, windows, and central air conditioning installed in the home. She also had the

basement waterproofed and a new roof put on the house and garage. Appellee used her own money to pay all of the household bills, including the purchase of food for Rosella. Appellee did all the chores around the house and she prepared all the daily meals for her mother.

{¶ 3} Appellee testified that prior to Rosella's death, Rosella was able to get around the house on her own but that Rosella's legs had been giving her trouble and she had become "unsteady." Appellee stated that Rosella would bump into things and that she bruised very easily. Appellee also noticed that her mother's eyesight was failing her. Appellee testified that she had urged her mother on numerous occasions to see a doctor but that Rosella had always refused to go. Appellee stated that her mother had been a private person and that she disliked hospitals and doctors. Appellee also indicated that her mother had never complained of being in any type of discomfort or pain.

{¶ 4} Appellee further testified that Rosella had been feeling poor several days before her death. On the morning of March 26, 1995, appellee helped her mother out of bed and into the bathroom. They then went into the kitchen. About midmorning, appellee assisted Rosella to the bathroom and appellee returned to the kitchen. Shortly thereafter, appellee called to her mother, but she did not respond. When appellee went back to the bathroom to check on Rosella, appellee found her mother sitting on the toilet with her head back and eyes open. Appellee then summoned a neighbor for help and she also called 911.

{¶ 5} Rosella was taken to St. Joseph Hospital, where she was pronounced dead at 3:21 p.m. Hospital staff who treated Rosella described a terrible odor emanating from her body. The coroner who performed the autopsy indicated that at the time of Rosella's death, she had severe medical problems. The coroner noted that Rosella had bruises and decubitis ulcers on various parts of her body and that she had gangrenous tissue on her buttocks and around the perineum region. Rosella also had dried skin debris between her toes, untreated cataracts, and broken bones.

The coroner ruled Rosella's death as "Organizing lobar pneumonia, bilateral, due to gangrenous necrosis of skin and subcutaneous tissues of right hip region due to gross neglect."

{¶ 6} On June 7, 1995, appellee was indicted by a Lorain County Grand Jury on one count of involuntary manslaughter in violation of former R.C. 2903.04(B), an aggravated third-degree felony, and one count of nonsupport of a dependent in violation of former R.C. 2919.21(A)(3), a first-degree misdemeanor. The involuntary manslaughter count was predicated upon the misdemeanor nonsupport charge.[1]

{¶ 7} Appellee waived her right to trial by jury and the matter proceeded to a bench trial. The trial court found appellee guilty of both counts in the indictment. The court sentenced appellee to a prison term of two to ten years for the manslaughter conviction and to six months for the nonsupport offense. The trial court ordered that the sentences run concurrently. Appellee was also ordered to pay a fine of $500 for the nonsupport conviction.

{¶ 8} Appellee appealed to the Court of Appeals for Lorain County. A panel of the court of appeals unanimously reversed appellee's convictions, finding that appellee had been improperly prosecuted under R.C. 2919.21(A)(3).[2] In reaching this conclusion, the court determined that R.C. 2919.21(A)(3) requires only that an adult child provide adequate *financial* support for his or her dependent parent and that evidence of the lack of medical attention or care for the parent is not, by itself, sufficient to sustain a conviction under the statute. Thus, the court of

---

1. R.C. 2903.04(B) presently provides:

"No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or forth degree or a minor misdemeanor."

2. The current version of R.C. 2919.21(A)(3) is substantially equivalent to former R.C. 2919.21(A)(3) (offense of nonsupport of a dependent parent). Thus, we will refer to the statute in its present version.

appeals reversed appellee's conviction for nonsupport and held that "[b]ecause her conviction for the predicate misdemeanor offense is reversed, her conviction for involuntary manslaughter as a proximate result of the commission of a misdemeanor is likewise reversed." Thereafter, the court, finding its judgment to be in conflict with the judgment of the Twelfth Appellate District in *State v. Holder* (1991), 72 Ohio App.3d 374, 594 N.E.2d 981, entered an order certifying a conflict, and we determined that a conflict existed.

————————————

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Robert F. Corts*, Assistant Prosecuting Attorney, for appellant.

*John S. Haynes*, for appellee.

————————————

**DOUGLAS, J.**

**{¶ 9}** The question that has been certified for our consideration is, "Does R.C. 2919.21(A)(3) contemplate 'support' to include proper care, feeding and medical attention as well as financial support[?]" For the reasons that follow, we find that the term "support," as used in R.C. 2919.21(A)(3), applies only to *financial* support for a dependent parent. Accordingly, we affirm the judgment of the court of appeals.

**{¶ 10}** R.C. 2919.21(A)(3) currently provides:

"(A) No person shall abandon, or fail to provide *adequate support* to:

"* * *

"(3) The person's aged or infirm parent or adoptive parent, who from lack of ability and means is unable to provide adequately for the parent's own *support*." (Emphasis added.)

**{¶ 11}** The record in this case reveals that appellee used a substantial portion of her savings to provide her mother with a nice home and comfortable surroundings. Appellee also made sure that the house was kept in a clean condition

and that her mother was properly fed and clothed. Nevertheless, appellant, the state of Ohio, contends that such support was not enough. Appellant argues that, for purposes of R.C. 2919.21(A)(3), the term "support" includes both financial and nonfinancial considerations. In this regard, appellant asserts that the court of appeals erred in reversing appellee's convictions because there was evidence that Rosella's death was caused by appellee's failure to provide her mother with needed medical attention and care.

{¶ 12} However, appellant's contentions are severely undercut by the 1973 Technical Committee Comment to Am.Sub.H.B. No. 511, which explicitly states that R.C. 2919.21(A)(3) "deals only with nonsupport and *contains no elements of neglect* or abuse, which are dealt with in section 2919.22 of the Revised Code." (Emphasis added.) The court of appeals concluded that the comment resolved any uncertainty as to whether the General Assembly intended to include nonfinancial support factors within the purview of R.C. 2919.21(A)(3). Specifically, the court held that "[a] reading of the statute and ensuing comments establishes the legislature intended to require adult children to assume financial responsibility for their aged parents, if the parents lack the financial resources to provide for themselves. The comments specifically state the section contains no elements of abuse and neglect, thereby implying the duty of care imposed by the statute is a purely financial one. The comments further state abuse and neglect are covered by R.C. 2919.22, a section that applies only to child dependents. There is no parallel section in the [R]evised [C]ode imposing a similar duty upon adult children to care for and protect aged dependent parents."

{¶ 13} We agree with the well-reasoned conclusions reached by the court of appeals. R.C. 2919.21 does not define the term "support," nor does it provide any guidance with respect to specific legal duties owed by an adult child to a dependent parent. However, the accompanying comment to R.C. 2919.21(A)(3) expressly provides that the statute contains no elements of *neglect* or abuse. To

that end, we can only assume, as did the court of appeals, that the General Assembly intended the term "support" to include only necessary financial assistance for a dependent parent. Clearly, if the General Assembly had intended the term "support" to automatically include additional nonfinancial support factors, it could have easily done so. Thus, given the mandates of R.C. 2901.04(A),[3] and the Committee Comment to R.C. 2919.21, we find that R.C. 2919.21(A)(3) requires an adult child to provide adequate financial support for his or her dependent parent if the parent is in need of financial assistance and the adult child has the financial means to provide such support.[4] The term "support," as used in R.C. 2919.21(A)(3), does not encompass nonfinancial support considerations. In so holding, we also specifically reject appellant's suggestion that we should apply the holding and rationale of the Twelfth District Court of Appeals in *State v. Holder* (1991), 72 Ohio App.3d 374, 594 N.E.2d 981, to the case now before us.

{¶ 14} In *Holder*, the defendant was convicted of nonsupport under R.C. 2919.21(A)(3) for failing to provide his mother with adequate nourishment and medical care. On appeal, the court of appeals affirmed the defendant's conviction, finding that R.C. 2919.21(A)(3) encompassed financial as well as nonfinancial support considerations. Specifically, the court in *Holder* held that "[r]eading R.C. 2919.21 *in pari materia* with R.C. 3113.04[A], it is clear that the legislature contemplated more than simply financial nonsupport and intended a broader definition for the term 'support' than that contained in the Committee Comment following R.C. 2919.21. Indeed, it is logical to conclude that such support should

---

3. R.C. 2901.04(A) states:
    "Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

4. R.C. 2919.21(D) currently provides:
    "It is an affirmative defense to a charge of failure to provide adequate support under division (A) of this section or a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means."

include proper care, feeding and medical attention, all of which were lacking as adequately demonstrated by the record herein." (Emphasis *sic*.) *Id*., 72 Ohio App.3d at 376, 594 N.E.2d at 983.

{¶ 15} The court of appeals in the case at bar concluded, and we agree, that the *Holder* court applied an overly expansive interpretation of the term "support," failing to give little, if any, weight to the comment accompanying R.C. 2919.21(A)(3). In this regard, the court in *Holder* completely ignored R.C. 2901.04(A), which requires that criminal statutes defining offenses or penalties be strictly construed against the state and liberally construed in favor of the accused. Moreover, the appellate court's reliance on R.C. 3113.04(A)[5] was clearly misplaced. Granted, R.C. 3113.04(A) "mentions" R.C. 2919.21. However, R.C. 3113.04(A) simply concerns the proper method and means by which a sentence can be suspended after a conviction under R.C. 2919.21 and before the sentence is actually imposed. To be sure, R.C. 3113.04(A) has no application to the case at bar. In any event, the term "support" is not defined anywhere in R.C. 3113.04(A). Further, although the statute refers to "other dependent[s]," nowhere in R.C. 3113.04(A) does it expressly provide that aged or infirm parents who have not received medical attention are in the group of "dependents" at whom the statute is directed. Thus, we find the Twelfth District Court of Appeals' rulings in *Holder* not well taken.

---

5. R.C. 3113.04(A) currently states:

"Sentence may be suspended if a person, after conviction under section 2919.21 of the Revised Code and before sentence under that section, appears before the court of common pleas in which the conviction took place and enters into bond to the state in a sum fixed by the court at not less than five hundred nor more than one thousand dollars, with sureties approved by the court, conditioned that the person will furnish the child or other dependent with necessary or proper home, care, food, and clothing, or will pay promptly each week for such purpose to the division of child support in the department of human services, a sum to be fixed by the agency. The child support enforcement agency shall comply with sections 3113.21 to 3113.219 of the Revised Code when it fixes the sum to be paid."

**{¶ 16}** Furthermore, we agree with appellee that an expansive interpretation of R.C. 2919.21(A)(3), as urged by appellant, could result in continued unwarranted prosecutions of adult children who have elderly parents who may be in need of medical attention or care but have refused to seek treatment for their conditions. The problem is even further compounded if the adult child is separated geographically from his or her elderly parent. Hence, we can only presume that the General Assembly, in enacting R.C. 2919.21(A)(3), was aware of the endless problems that could possibly arise if the term "support" was intended to include nonfinancial factors. See R.C. 1.47.[6] Indeed, we do not believe that the General Assembly intended to place adult children in such untenable situations and create fertile grounds for unreasonable and excessive prosecutions.

**{¶ 17}** Based on the foregoing, we agree with the court of appeals in this case that while it appears that appellee failed to provide her mother with needed medical care, appellee did not violate R.C. 2919.21(A)(3). Absent further guidance by the General Assembly in this area, an adult child's duty in these types of cases rests upon a moral obligation, not an obligation enforceable by law. Accordingly, we affirm the judgment of the court of appeals and order that charges against appellee be dismissed.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

--------------------

--------------------

6. R.C. 1.47 provides:
   "In enacting a statute, it is presumed that:
   "* * *
   "(C) A just and reasonable result is intended;
   "(D) A result feasible of execution is intended."