This is an appeal from a judgment of conviction and sentence entered by the Gallipolis Municipal Court, upon a bench trial, finding Jamie M. Tales, defendant below and appellant herein, guilty of domestic violence in violation of Gallipolis Codified Ordinances 537.14. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE RELATIONSHIP BETWEEN THE TWO PARTIES IN THIS CASE, RIHONDA MORRIS, THE ALLEGED VICTIM, AND JAMIE M. TOLES, THE DEFENDANT/APPELLANT DOES NOT MEET THE STRICT STATUTORY CONSTRUCTION OF THE DOMESTIC VIOLENCE STATUTE, SECTION 2919.25E [sic] OF THE OHIO REVISED CODE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND FROM THE TESTIMONY IN THIS CASE THAT THE OFFENSE COMMITTED WAS THAT OF DISORDERLY CONDUCT, A VIOLATION OF SECTION 2917.11 OF THE OHIO REVISED CODE, AND NOT THE OFFENSE OF DOMESTIC VIOLENCE, A VIOLATION OF SECTION 2919.25 OF THE OHIO REVISED CODE."
The record reveals the following facts pertinent to this appeal. In the latter part of 1998, Lana Tales resided in an apartment in Gallipolis, Ohio, with her eleven (11) year old daughter Katrina Tales, sixteen (16) year old daughter Rhonda Morris and Rhonda's infant daughter, Daisy. Another daughter, twenty-three (23) year old Jamie Tales, appellant herein, lived in West Virginia but was visiting her mother around the Christmas holiday.
In the early morning hours of December 20, 1998, Rhonda and Katrina were up with Daisy and appellant's baby when appellant came home with her boyfriend Terry Qualls. The couple went upstairs immediately upon entering the residence which prompted Rhonda to call out to them and warn them not to use her bed for sex. Appellant responded in the affirmative. Rhonda was nevertheless suspicious and, moments later, asked Katrina to go and check to see if appellant and Qualls were having sex in her bed. Katrina returned and reported that they were, which prompted Rhonda to go upstairs and order the couple out of her bed. When appellant and her boyfriend refused, Rhonda called the police. Qualls (appellant's boyfriend) became upset that his itinerary had been interrupted and, thus, promptly departed the residence. This sent appellant into a fit of anger which led to her striking Rhonda in the face. Police Officers arrived on the scene several minutes later.
A complaint was filed in the Gallipolis Municipal Court on December 21, 1998, charging appellant with domestic violence in violation of R.C. 2919.25 and Gallipolis Codified Ordinances 537.14. The matter came on for a bench trial on April 29, 1999, at which time appellant freely admitted "smacking" her younger sister. She further stated that she had no regret over the incident. Judgment was then entered on August 27, 1999, finding her guilty and imposing a ten (10) days jail sentence and $100 fine, both of which were suspended, together with six (6) months probation. This appeal followed.[1]
The first assignment of error essentially posits that insufficient evidence exists to convict appellant of domestic violence. We agree. Both R.C. 2929.25 (A) and Gallipolis Codified Ordinances 537.14 (a) provide that "[n]o person shall knowingly cause or attempt to cause physical harm to a family orhousehold member." (Emphasis added.) A "family or household member" is defined for purposes of these laws as someone related by affinity or consanguinity to the offender and who is "residing or has resided with the offender." R.C. 2929.25 (E) (1) (a) (ii); Municipal Ordinance No. 537.14 (d) (1) (A) (2). There is no question in this case that the victim (Rhonda Morris) and the offender (appellant) are related by consanguinity (blood). The question is whether these two individuals can be classified as "family or household member(s)" for purposes of the domestic violence law(s). We ultimately resolve that question in the negative for the following reasons.
As mentioned above, family or household members are defined under these laws as those individuals who currently reside with, or have previously resided with, one another. Id. The concept of residency is not defined anywhere in either the statute or the municipal ordinance. However, the term "reside" generally means to "remain or stay, to dwell permanently or continuously." Black's Law Dictionary (1979) 1176. This definition has been adopted by at least one treatise on the subject and explained as follows:
 "(T) he intent of the parties is crucial to the definition. Unless they intended to permanently dwell with one another, they cannot be said to reside with or to have resided with each other. Under this definition, periodic visits with one another, whether or not they are overnight. and no matter how frequent, will not rise to the level necessary to meet the statutory requirements." (Emphasis added.) Adrine and Ruden, Ohio Domestic Violence Law (1999) 222, § T9.4.
We find this reasoning highly persuasive and reach the same conclusion ourselves. Criminal statutes must be strictly construed against the state and liberally construed in favor of the accused. See R.C. 2901.04 (A); also see generally State v.Flontek (1998), 82 Ohio St.3d 10, 14, 693 N.E.2d 767, 770; Statev. Hill (1994), 70 Ohio St.3d 25, 31, 635 N.E.2d 1248, 1253;State v. Collins (1993), 67 Ohio St.3d 115, 117, 616 N.E.2d 224,225. Moreover, we presume that the Ohio General Assembly was aware of the definition of the term "reside" when it enacted the statute and, thus, intended for that meaning to apply here. Seegenerally R.C. 1.42; also see Heiby Oil Co. v. Schregardus
(1993), 92 Ohio App.3d 46, 50, 634 N.E.2d 234, 237; Hughes v.Miller (1991), 72 Ohio App.3d 633, 636, 595 N.E.2d 960, 962;State v. Lawrence (Oct. 29, 1997), Summit App. No. 18298, unreported. We therefore conclude that the residency requirements under R.C. 2919.25 and Gallipolis Codified Ordinances 537.14 envision something more permanent in nature than just periodic visits even if those visits are overnight or last several days.[2]
Having so concluded, we turn our attention to the evidence adduced below. Rhonda Morris testified that she and appellant had never lived together. The victim explained that, while her sister would come and visit about once a month and might stay for a couple of weeks, appellant "never lived there." This testimony was corroborated by Katrina Toles who explained that appellant had "lived with her dad" and only visited with her mother. No evidence was ever introduced to show that appellant was, or had been at one time, a permanent or continuous resident of the household.
When a defendant challenges the legal sufficiency of the state's evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See State v. Fears (1999),86 Ohio St.3d 329, 341, 715 N.E.2d 136, 149; State v. Clemons
(1998), 82 Ohio St.3d 438, 444, 696 N.E.2d 1009, 1016; State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. No evidence introduced below shows that appellant and her victim ever permanently lived with one another and, thus, Rhonda Morris could not be deemed a family or household member f or purposes of R.C. 2929.25 or Gallipolis Codified Ordinances 537.14. It logically follows then that insufficient evidence exists to support appellant's conviction for domestic violence under either provision. Her first assignment of error is well taken and is accordingly sustained.
Appellant argues in her second assignment of error that the trial court should have only convicted her of disorderly conduct in violation of R.C. 2917.11 rather than domestic violence. She essentially urges us to modify the judgment below so that it would reflect a conviction f or this lesser offense. We are not persuaded. It is true that misdemeanor disorderly conduct is considered a lesser offense of domestic violence. See State v.Harris (1996), 109 Ohio App.3d 873, 876, 673 N.E.2d 237, 239;also see State v. Jordan (Sep. 3, 1999), Hamilton App. Nos. C-980903 C-980904, unreported; State v. Jewell (Dec. 15, 1997), Butler App. No. CA97-05-110, unreported. However, we believe the interests of justice are better served in this case by not entering a conviction for that offense ipso facto but rather remanding this case to the trial court so that all parties concerned may consider how best to proceed. The second assignment of error is therefore overruled.
Having sustained the first assignment of error, the judgment of the trial court is hereby reversed and this case is remanded for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and the cause be remanded for further proceedings. Appellant is to recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. : Concurs in Judgment Only
Evans, J. Concurs in Judgment Opinion
For the Court
 BY: _____(signed)____________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period f or further appeal commences from the date of filing with the clerk.
[1] Although the criminal complaint set forth both R.C.2929.25 and Gallipolis Codified Ordinances 537.14, appellant was only convicted of violating the municipal ordinance. The judgment did not find her guilty of violating the state statute. She nevertheless couches her arguments on appeal in terms of the state statute rather than the municipal ordinance. Fortunately, as the state points out in its own brief, the wording of the statute and the municipal ordinance are almost identical. Thus, our analysis herein would apply equally to either law.
[2] We reach the same conclusion with respect to the municipal ordinance because it was obviously copied from the state statute and was presumably meant to address the same sorts of situations.