[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant Justin Kelly appeals from the judgment of the Union County Court of Common Pleas, Juvenile Division, and asserts one assignment of error:
 The Union County Juvenile Court erred in binding over the appellant. The Court should have found the mandatory bindover statute unconstitutional.
The state's reply brief asserts the following cross-assignment of error:
 The defendant-appellant waived any errors to the claimed constitutionality of R.C. 2151.26 by his failure to raise the issue in the trial court below.
At the time of the incident that led to these charges, appellant Justin Kelly was seventeen years old and was employed by Grandview Construction Company in Union County. Grandview Construction is owned by Thomas Hampton and is located at Mr. Hampton's residence on Weaver road in Marysville.
On the evening of June 14, 1997, the appellant went to his employer's place of business and broke into a storage barn. Appellant stole a van and a .22 caliber rifle that belonged to his employer, and drove the van from his employer's premises towards downtown Marysville. Appellant had argued with his father earlier in the evening and was apparently suicidal at the time of the theft.
Aaron Hampton, the son of appellant's employer, was at his brother's house next door to the business and saw appellant drive off in the van. Aaron then followed appellant down Scottslawn Road in his own vehicle. While following the van, Aaron positively identified appellant as the driver.
Aaron testified that while he was following the van, he heard what he thought was a "firecracker" and saw the rifle pointed out the van window in his general direction. On cross-examination, he stated that he never felt that the rifle was pointed directly at him. After passing and attempting to flag down a police cruiser, Aaron continued to chase the van.
Patrolman Chad Seeberg of the Marysville Police Department was on bicycle duty in the area at the time and received radio notice of a white van driving erratically. When he saw the van, he attempted to signal appellant to stop by flashing his lights. The van accelerated and crossed over the median into the opposite lane. Patrolman Seeberg was forced onto the sidewalk to avoid being struck.
Patrolman Michael Krantz arrived on the scene at this time and pursued the van into a nearby mobile home park. Appellant exited the van with the rifle and ran around a nearby corner. When Patrolman Krantz parked and opened the door of his cruiser, appellant shot at him with the rifle. The bullet narrowly missed Patrolman Krantz's head and lodged in the top of the police car near the light bar. Patrolman Krantz then drew his service revolver and fired three shots in the direction of appellant. Appellant fired a second shot at Patrolman Krantz, which again missed and lodged in a mobile home across the street.
At this point, Patrolman Seeberg entered the mobile home park and saw appellant with the rifle in his hand. Patrolman Seeberg aimed at appellant with his service revolver and yelled for appellant to drop the rifle. Appellant dropped the rifle and was ordered to the ground. As he was moving toward the ground, appellant repeatedly stated "just go ahead and shoot me." Patrolman Krantz then handcuffed appellant and placed him under arrest.
On June 16, 1997, a complaint was filed in the Union County Court of Common Pleas, Juvenile Division, alleging ten separate delinquency charges against appellant. Among the acts charged were one count of attempted murder under R.C. 2903.02 and two counts of aggravated robbery under R.C. 2913.02 with firearm specifications, all of which are specified as "mandatory transfer" offenses under R.C. 2151.26(B). The complaint also alleged seven other counts which were not subject to mandatory transfer. Immediately after the filing of the delinquency complaint, the prosecutor filed a motion to transfer the entire case to the general division of the Union County Court of Common Pleas pursuant to R.C. 2151.26(B).
The juvenile court set a probable cause hearing for June 27, 1997. At appellant's request, that hearing was continued to July 25. The parties were directed to file briefs arguing the bindover issue by July 21. In the interim, the court held an informal conference with appellant's counsel and the prosecutor, and they agreed that an assessment would be completed to determine defendant's amenability to treatment in the juvenile justice system.
On July 3, appellant filed a brief arguing that the mandatory bindover provisions of R.C. 2151.26 were unconstitutional. The state filed a reply on July 17, arguing that the statute was constitutional. On July 21, appellant's counsel filed a motion asking the juvenile court to declare the mandatory bindover provisions of the statute unconstitutional.
On July 25, 1997, the juvenile court held a hearing and determined that was probable cause to believe that the juvenile committed all ten offenses alleged, and that those offenses would be felonies if committed by an adult. The court set an amenability hearing for August 27, 1997. The court also heard oral argument on the question of the constitutionality of the mandatory bindover provisions, and took that question under advisement.
On August 19, the juvenile court received the report of the court appointed amenability assessor, which detailed several factors which the assessor believed to have motivated appellant's behavior. The report concluded that appellant would most likely be amenable to treatment.
On August 27, the juvenile court held a hearing to address the amenability issue. At this time, the state asserted the position that the mandatory bindover provisions of R.C. 2151.26
precluded the court from making a determination as to amenability. The court heard argument on that issue, and accepted a stipulation to the assessor's report. No other evidence was presented on behalf of appellant at the hearing.
On October 27, the juvenile court issued a decision and opinion finding R.C. 2151.26(B) constitutional and bound appellant over for indictment common pleas court on all the charges, including those which were within the court's discretion to retain. Appellant was indicted on the same or similar ten counts by the Union County Grand Jury on November 10, 1997. Appellant did not allege the unconstitutionality of R.C. 2151.26(B) by motion or other means in the common pleas court.
On May 8, 1998, appellant appeared before the common pleas court and withdrew his previous plea of not guilty. He entered a plea of no contest to the indictment, was subsequently sentenced and was placed in the custody of the department of rehabilitation and correction. He now appeals, arguing that the juvenile court erroneously concluded that the mandatory bindover provisions of R.C. 2151.26 are constitutional. The state in response argues that even if R.C. 2151.26(B) is unconstitutional, appellant waived any objection on that ground because he failed to raise it in the common pleas court.
As an initial matter, we reject the state's argument that appellant failed to preserve this issue for our review. First, we must observe that appellant could not have taken a direct appeal from the juvenile court's decision to transfer the case. A juvenile court's decision to transfer an appellant to the appropriate court having jurisdiction over the offense if committed by an adult is not a final appealable order. In ReBecker (1974), 39 Ohio St.2d 84, 87; see also In re Langston
(1997), 119 Ohio App.3d 1, 2. Appellant's claim could only be raised on appeal from the common pleas court. This is exactly what appellant has done.
However, the state relies on the fact the appellant failed to assert the unconsitutionality of R.C. 2151.26 in the common pleas court to claim that appellant waived the issue. We disagree. The appellant properly raised the issue in the juvenile court, a division of the Union County Court of Common Pleas. R.C. 2151.07. Moreover, that court thoroughly addressed all of the questions of constitutionality in its bindover decision. The state's assignment of error is overruled and we will thus address the merits of appellant's claim that R.C. 2151.26(B) is unconstitutional.
We must begin by observing that all legislation is strongly presumed to be constitutional. State v. Smith (1997), 80 Ohio St.3d 89,99. In order for a statute to be deemed unconstitutional, it must be clear beyond a reasonable doubt that the legislation and constitutional provisions are incompatible.State v. Thompkins (1996), 75 Ohio St.3d 558, 560. Any doubts regarding the validity of a legislative enactment should be resolved in favor of the statute. State v. Gill (1992), 63 Ohio St.3d 53,55. We thus presume the constitutionality of R.C 2151.26(B).
R.C. 2151.26(B) governs mandatory transfers. It provides:
 After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be an offense if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense if the child was fourteen years of age or older at the time of the act charged, if there is probable cause to believe that the child committed the act charged, and if one or more of the following applies to the child or the act charged:
 (1) A complaint previously was filed in a juvenile court alleging that the child was a delinquent child for committing an act that would be an offense if committed by an adult, the juvenile court transferred the case pursuant to division (B) or (C) of this section for criminal prosecution to the appropriate court having jurisdiction of the offense, and the child was convicted of or pleaded guilty to a felony in that case.
 (2) The child is domiciled in another state, and, if the act charged had been committed in that other state, the child would be subject to criminal prosecution as an adult under the law of that other state without the need for a transfer of jurisdiction from a juvenile, family, or similar noncriminal court to a criminal court.
 (3) The act charged is a category one offense, and either or both of the following apply to the child:
 (a) The child was sixteen years of age or older at the time of the act charged.
 (b) The child previously was adjudicated a delinquent child for committing an act that is a category one offense or a category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.
 (4) The act charged is a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen of age or older at the time of the commission of the act charged, and either or both of the following apply to the child:
 (a) The child previously was adjudicated a delinquent child for committing an act that is a category one offense or a category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.
 (b) The child is alleged to have had a firearm on or about the child's person while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
R.C. 2151.26(A) provides definitions used by the statute:
As used in this section:
 (1) "Category one offense" means any of the following:
 (a) A violation of section 2903.01 or 2903.02 of the Revised Code;
 (b) A violation of section 2923.02 of the Revised Code involving an attempt to commit aggravated murder or murder.
(2) "Category two offense" means any of the following:
 (a) A violation of section 2903.03, 2905.01, 2907.02, 2909.02, 2911.01, or 2911.11 of the Revised Code;
 (b) A violation of section 2903.04 of the Revised Code that is a felony of the first degree;
 (c) A violation of section 2907.12 of the Revised Code as it existed prior to September 3, 1996.
 (3) "Firearm" has the same meaning as in section 2923.11 of the Revised Code.
 (4) "Act charged" means the act that a child allegedly committed and that is identified in a complaint alleging that the child is a delinquent chld as the act that is the basis of the child being a delinquent child.
Appellant specifically argues that R.C. 2151.26(B) violates due process under both the state and U.S. constitutions, that it is invalid as a nullification of the right to bear arms under Art. I, Section 4 of the Ohio Consitution, that it violates equal protection under both the state and U.S. constitutions, that it impinges upon the Ohio Supreme Court's rulemaking authority under Art. IV, Section 5(B) of the Ohio Constitution, and that it violates separation of powers under the Ohio Constitution.
I. DUE PROCESS
Appellant alleges that R.C. 2151.26(B) violates his due process rights under the Ohio Constitution and the United States Constitution. Appellant advances several arguments in support of his due process claim, which implicate due process in both its substantive and procedural forms. He begins by arguing that R.C.2151.26(B) is void for vagueness.
To establish that a statute is void for vagueness, appellant must show that the statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." State v. Tanner (1984), 15 Ohio St.3d 1, 3, quotingPapachristou v. City of Jacksonville (1972), 405 U.S. 156, 162. The Ohio Supreme Court has stated that:
 Three "values" rationales are advanced to support the "void for vagueness" doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few restraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.
 Tanner, supra at 3 (citations omitted).
Like many other Ohio statutes, R.C. 2151.26 utilizes the definition of "firearm" found in R.C. 2923.11(B). See R.C.2151.26(A)(3). Appellant argues that based on People's RightsOrganization v. City of Columbus (1998), 152 F.3d 522, this definition is unconstitutionally vague. In that case, the federal district court struck down a local ordinance which defined an "assault weapon" as including "any firearm which may be restored to an operable assault weapon." Columbus City Code 2121.11(G)(4), cited in People's Rights at 535. Appellant contends this language is substantially the same as that in R.C. 2923.11(B), which defines "firearm" to include "any firearm that is inoperable but that can readily be rendered operable."
At the outset, we note that there is no question that the firearm used by appellant in this case was fully operable. Hence, as applied to appellant any issue of statutory vagueness may well be moot. Nevertheless, in proceeding to address appellant's argument, we percieve several major differences between the two definitions. However, we need only note that the People's Rights
court found fault with the phrases "may be restored" and "assault weapon," not with the words "operable" or "firearm." People'sRights at 537. Because neither "may be restored" nor "assault weapon" appear anywhere in R.C. 2923.11(B), appellant's citation of People's Rights is unpersuasive. Appellant's contention is further undermined by the fact that the Ohio Supreme Court has several times interpreted the language to which appellant objects and has never found that language to be vague. State v. Gaines
(1989), 46 Ohio St.3d 65, 68-9; State v. Murphy (1989), 49 Ohio St.3d 206,208-9; State v. Thompkins (1997), 78 Ohio St.3d 380,383-4. Finally, we must observe that appellant does not cite and we have been unable to find any Ohio case that supports appellant's argument.
We conclude that the definition of "firearm" in R.C.2923.11(B) satisifies each of the three rationales enunciated inTanner and gives constitutionally adequate notice as to what objects fall under its scope. The plain meaning of the language to which appellant objects describes firearms which are actually able to discharge or can quickly be modified such that they are able to discharge, and we believe that any layperson reading the law can understand that meaning and conform their behavior accordingly. State v. Anderson (1991), 57 Ohio St.3d 168, 171-74; Cf. Kolender v. Lawson (1983), 461 U.S. 352, 357. The term also places adequate restrictions upon officials who enforce the state's laws, because it is clear what items are covered under the definition. State v. Anderson, 57 Ohio St.3d at 174-75. Finally, appellant has not met his burden to show that the asserted vagueness unreasonably impinges on any constitutionally protected freedoms. Accordingly, the definition of "firearm" found in R.C.2923.11(B) is thus not void for vagueness, and therefore the use of that definition in R.C. 2151.26(B) is constitutional.
Appellant's other due process claims are rooted in the United States Constitution and the U.S. Supreme Court's decision in Kentv. United States (1966), 383 U.S. 541. In that case, the Court determined that juvenile bindovers "must measure up to the essentials of due process and fair treatment." Id. at 562. The court determined that to satisfy due process in the context of juvenile transfer deteerminations courts must conduct a hearing, provide juvenile appellants with assistance of counsel, and issue a statement of the reasons for transfer of jurisdiction out of the juvenile court. Id. at 554. The Kent opinion also contained eight specific "factors" which juvenile courts were encouraged to use in determining the propriety of a transfer of jurisdiction.Id. at 565-67.
Although Ohio did not adopt the eight "Kent factors" verbatim, former Juv.R. 30(F) outlined several factors pertinent to a determination of "amenability to treatment" in the juvenile system that are substantially similar to the ones described inKent. Thus, pursuant to former Juv.R. 30, juvenile courts contemplating discretionary bindovers were required to make amenability findings based on those factors. Former Juv.R. 30(F). This former version of Juv.R. 30 was in effect at the time of appellant's trial, and he argues that because R.C. 2151.26(B) does not provide for a determination of amenability pursuant to the factors in former Juv.R. 30 that the statute is violative of his substantive due process rights.
Several other Ohio courts have already held that the right to an amenability hearing is a substantive right. See In re Langston
(1997), 119 Ohio App.3d 1, 4; State v. Collins (June 3, 1998), Lorain Cty. App. No. 97CA006845, unreported; In re Treavor M.Baker (Mar. 4, 1996), Franklin Cty. Dom. Rel. Juv. Branch No. 96JU-01-0268, unreported. However, we believe it is more precise to say that the hearing is a procedural opportunity for the exercise of such substantive rights as the legislature or the Constitution provides. The question therefore is whether the factors enumerated in former Juv.R. 30 (or more specifically, the factors enumerated in the Kent appendix) in a transfer determination constitute a "fundamental" right guaranteed by the due process clause of the fourteenth amendment to the U.S. Constitution.[1] If a weighing of those factors is a fundamental right, R.C. 2151.26(B) must provide such a weighing and the failure to so provide must subject that statute to strict scrutiny.
We agree with those courts, including the juvenile court in this case, that have concluded that the right to an amenability determination strictly pursuant to the factors in former Juv.R. 30 is not "fundamental." State v. Collins, supra at **2. In Breedv. Jones (1975), 421 U.S. 519, 537-38, the U.S. Supreme Court stated:
 this Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law * * *.
Based on this analysis we conclude not only that the former Juv.R. 30 factors are constitutionally equivalent to the Kent factors, but also that the Due Process clause of the Constitution does not mandate the use of either set of factors. Because both former Juv.R. 30 and the Kent factors were intended to address the problem of arbitrary decisionmaking and disparate treatment in discretionary bindover determinations, due process does not require their use when the legislature has statutorily eliminated such determinations. The Illinois Supreme Court recognized this very point in People v. P.H. (Ill. 1991), 582 N.E.2d 700, 712, in which it upheld the constitutionality of a statute very similar to the one at issue here. The court observed that where a juvenile court's discretion to transfer a case to common pleas court is statutorily removed, disparity of treatment is not a concern and thus due process does not require that courts weigh the Kent
factors.
We agree with the Illinois Supreme Court. Substantive due process does not mandate a weighing of specific factors prior to a transfer, it merely requires that such transfers not be made on an arbitrary basis. Due process does not therefore prevent the state legislature from altering the factors to be weighed in making transfer decisions or from removing the weighing of those factors entirely for certain offenses, provided that removal is rationally related to a legitimate government purpose. See, e.g., Akron v.Rasdan (1995), 105 Ohio App.3d 164, 172-3.
Because an amenability determination pursuant to the specific factors of former Juv.R. 30 is not a fundamental right, we therefore apply only basic substantive due process scrutiny, and determine that R.C. 2151.26(B) is rationally related to the legitimate government purpose of deterring violent juvenile crime.State v. Collins (June 3, 1998), Lorain Cty. App. No. 97CA006845, unreported.
Although the Kent factors have been widely used to guide courts making transfer determinations, the major effect of theKent opinion was to establish certain procedural requirements under the due process clause for bindover hearings. In this regard, the Kent requirements are slightly stricter that the traditional "notice and an opportunity to be heard." Cf. Palmer v.Taylor (1973) 479 F.2d 153. To comply with the procedural aspects of due process under Kent, a juvenile court must hold a hearing, the child must be represented by counsel and the court must issue a statement of reasons for a transfer to an adult court. Kent,383 U.S. at 1057.
R.C. 2151.26(B), which removes discretion from the juvenile court to retain jurisdiction over specific enumerated offenses by implication also removes the ability of a juvenile court to consider amenability issues in relation to those offenses. However, the elimination of a separate hearing on amenability does not violate procedural due process as described in Kent v.United States. The procedural prerequisites to transfer described inKent — representation by counsel, a hearing and a statement of reasons — are properly provided for in R.C. 2151.26(B). Kent does not mandate a two-step process to satisfy procedural due process, it merely requires that a hearing be held and reasons be given for a transfer of jurisdiction.
Under R.C. 2151.26(B), juvenile judges are required to hold a hearing to determine the appellant's age, the category of the offense charged and whether probable cause exists. All of these requirements were met in this case. Appellant does not allege that he lacked representation by counsel and the record clearly reflects that counsel was present at appellant's proceedings in the juvenile court. Because appellant was provided with counsel, and because R.C. 2151.26(B) mandates a hearing and findings on all three factors prior to a mandatory bindover, procedural due process is satisfied. Accord People v. PH, 582 N.E.2d at 712.
Because R.C. 2151.26(B) is not void for vagueness and satisfies both the substantive and procedural requirements of thefourteenth amendment's due process clause, appellant's contention that the statute violates due process is without merit.
II. RIGHT TO BEAR ARMS
The appellant argues that in Arnold v. City of Cleveland
(1993), 67 Ohio St.3d 35, 46 the Ohio Supreme Court recognized a fundamental right to bear arms under Article I, Section 4 of the Ohio Constitution. Appellant claims that R.C. 2151.26(B) abrogates that right by automatically transferring juveniles who use firearms in the commission of crimes to common pleas court. He further claims that because the right to bear arms is fundamental, R.C. 2151.26(B) is subject to strict scrutiny and is unconstitutional under that standard.
We agree that Section 4, Article I of the Ohio Constitution "confers upon the people of Ohio the fundamental right to bear arms." Arnold, supra at 46. However, we observe that the Ohio Supreme Court has specifically stated that "the right to bear arms is not an unlimited right and is subject to reasonable regulation." Id. at 47. Thus, although the right to bear arms is fundamental, "the test is one of reasonableness," not strict scrutiny. Id. In analyzing a particular statute under the reasonableness standard, we will not overturn the judgment of legislature unless the statute is a clear abuse of power. Id. at 48. Appellant has made no attempt to demonstrate that the statute is an abuse of power and we believe that R.C. 2151.26(B), insofar as it affects the right of juveniles to bear arms, is a reasonable and narrow response to the problem of juvenile violent crime. We further observe that the statute only affects those persons who
 have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
R.C. 2151.26(B)(4)(b). The statute therefore does not impinge the lawful possession and use of firearms. It only comes into play when a firearm is implicated in the commission of a crime.[2]
The statute therefore clearly satisfies the test for constitutionality under Arnold.
Insofar as appellant's argument implicates the United States Constititution, it also lacks merit. The right to bear arms as enumerated in the Second Amendment has not been recognized as a fundamental right and has never been applied to restrict the powers of the individual states. See, e.g., Arnold at 39-41. Appellant's arguments that R.C. 2151.26(B) violates the right to bear arms are thus not well taken.
III. EQUAL PROTECTION
Appellant argues that R.C. 2151.26(B) creates an arbitrary classification by treating juveniles who commit gun crimes differently than those who commit crimes with other types of weapons. He claims that this disparate treatment violates the Equal Protection clauses of both the Ohio Constitution and the United States Constitution.
The equal protection clause of the Ohio Constitution has been interpreted to be essentially identical in scope to the analogous provision of the U.S. Consitution. State v. Brown (1996), 117 Ohio App.3d 6,10. We therefore analyze both of appellant's equal protection claims under the same standard:
 Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective. Departures from traditional equal protection principals are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved.
 State v. Thompkins (1996), 75 Ohio St.3d 558, quoting State exrel. Vana v. Maple Hts. City Council (1990), 54 Ohio St.3d 91, 92.
Appellant has not alleged that the statute implicates a suspect classification and we have already determined that no fundamental rights are abridged by the statute. We thus review this claim under a traditional equal protection analysis and if the classification of juvenile gun offenders is a rationally related to a legitimate government interest, the classification is permissible. We believe that the legislature's decision to treat juvenile gun offenders differently than other offenders is a classification that is rationally related to the legitimate government interest of deterring violent juvenile crime. Other courts considering the issue have reached the same conclusion.State v. Collins (June 3, 1998), Lorain Cty. App. No. 97CA006845, unreported; State v. Ramey (May 22, 1998), Montgomery Cty. App. No. 16442, unreported. Appellant's equal protection claims are therefore without merit.
IV. "MODERN COURTS" AMENDMENT
The appellant next argues that as amended, R.C. 2151.26(B) mandates procedures that are in conflict with those outlined in former Juv.R. 30. Appellant contends that because of the conflict the statute must be deemed ineffectual under Article I, Section 5
of the Ohio Constitution, the Modern Courts Amendment. That section vests authority to promulgate procedural rules in the Supreme Court and nullifies statutes which conflict with procedural rules. Ohio Constitution, Article IV, Section 5(B);State v. Slatter (1981), 66 Ohio St.2d 452, 454. Specifically, appellant argues that because R.C. 2151.26(B) does not require weighing of the factors described in former Juv.R. 30 that the statute is null.
We agree with and join the majority of courts who have concluded that former Juv.R. 30 never applied to mandatory bindovers and thus could not be in conflict with R.C. 2151.26(B).In re Langston (1977), 119 Ohio App.3d 1, 4; State v. Ramay (May 22, 1998) Montgomery Cty. App. No. 16442, unreported; State v.Gamble (March 11, 1998), Lorain Cty. App. No. 97CA006764, unreported; In re Treavor M. Baker (Mar. 4, 1996), Franklin Cty. Dom. Rel. Juv. Branch No. 96JU-01-0268, unreported. The text of the rule limits its application to "any proceeding where the courtmay transfer a child . . . for prosecution as an adult." Former Juv.R. 30(A). The rule was thus limited by its terms to discretionary bindovers. It is not therefore in conflict with R.C. 2151.26(B), which describes procedures for nondiscretionary transfer of jurisdiction.[3]
 V. SEPARATION OF POWERS
Finally, appellant argues that the legislature's enactment of R.C. 2151.26(B) improperly restricts the right of the juvenile court to hear bindover cases in violation of separation of powers principles described in State ex rel. Johnston v. Taulbee (1986),66 Ohio St.2d 417. In that case, the Supreme Court determined that a statute which allowed a board of county commissioners to drastically reduce the funding allotted to juvenile and probate courts was an "impermissible legislative encroachment upon the inherent powers of the judiciary * * *." Taulbee,66 Ohio St.2d at 417, paragraph three of the syllabus.
Juvenile courts are not Art. IV courts under the Ohio Constitution, but are created by legislative enactment. R.C.2151.07. Legislative restrictions on the operation of juvenile courts do not implicate the same separation of powers concerns outlined in Art. IV. The legislature has always defined the jursidiction and powers of the juvenile courts. R.C. Chapter 2151. While it is true that Taulbee recognized that even legislatively created courts have some "inherent powers," the decision also limited those powers that necessary "to effectuate an orderly and efficient administration of justice." Taulbee,66 Ohio St.2d at 420. In our view, R.C. 2151.26(B) does not interfere with the administration of justice in any constitutionally significant way. We therefore determine the encroachment argument to be misplaced and without merit.
Appellant also argues that the enactment of R.C. 2151.26(B) amounts to a transfer of decisionmaking authority from juvenile court judges to prosecutors. Appellant argues that because R.C.2151.26(B) provides that certain types of charges must be transferred upon a motion by the State, the discretion to charge as an adult has become vested in prosecutors rather than judges.
While appellant is correct in asserting that some discretion has perhaps been removed from juvenile court judges and placed in the hands of prosecutors, it is the legislature who has accomplished this transfer. Appellant's second separation of powers argument is therefore the same as his first, and fails for the same reason. Because juvenile courts are statutory rather than constitutional, the legislature has broad powers to enact laws which restrict their authority. Finally, we note that notwithstanding the prosecutor's initial motion, the juvenile court must still make a number of judicial determinations under the statute, all of which were made in this case. Appellant's separation of powers arguments are therefore without merit.
V. CONCLUSION
Based on the foregoing discussion, it is our assessment that appellant has failed to overcome the presumption that the mandatory bindover provisions of R.C. 2151.26(B) are consitutional. Appellant's sole assignment of error is therefore overruled and the judgment and sentence of the Union County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and HADLEY, JJ., concur.
[1] Our reading of former Juv.R. 30 indicates that it was never intended to apply to mandatory transfers. See Section IV, infra. However, appellant's argument is that the amendments to R.C. 2151.26 enumerate specific offenses which are no longer subject to determinations based on the former Juv.R. 30 factors and therefore improperly "remove" substantive considerations to which appellant has a fundamental right.
[2] The quoted language is virtually identical to that found in R.C. 2941.14.5, the mandatory three-year felony gun specification. We note that the general assembly could easily have chosen the language found in R.C. 2945.14.1, which imposes a one year mandatory enhancement on an offender who "had a firearm on or about the offender's person or under the offender's control" while committing the offense. Instead, the mandatory bindover statute requires use of a firearm during the commission of a "category 2" crime. R.C. 2151.26(B)(4)(b).
[3] Assuming for purposes of appellant's argument that former Juv.R. 30 did indeed apply to mandatory bindover procedures, we have already determined that the former Juv.R. 30 factors are substantive. See Part I, supra. It is clear that even under the Modern Courts Amendment statutes control over rules when substantive rights are at issue. State v.Slatter, 66 Ohio St.2d at 454. Therefore, even if a conflict existed between R.C. 2151.26(B) and former Juv.R. 30, it is the statute rather than the rule that controls appellant's case. See In re Treavor M. Baker (Mar. 4, 1996), Franklin Cty. Dom. Rel. Juv. Branch No. 96JU-01-0268, unreported.