DECISION AND JOURNAL ENTRY
Lawrence Zanders appeals from his conviction following a jurytrial in the Summit County Court of Common Pleas. This courtaffirms.
 I.
On October 23, 1992, at approximately 8:00 p.m., Denise Charley and her four-year-old son Dustin went out to get the mail from their mailbox, located on the opposite side of Krumroy Road from their Springfield Township home. As Denise and Dustin walked toward the road, but while still in their yard, they were struck by a car. Denise landed some twenty-five feet back from the roadside, and Dustin landed in the gravel shoulder area, at least one hundred feet from Denise. Moments later, another car drove down this section of Krumroy Road and the passenger noticed Denise struggling to get up from the yard. The driver stopped at the scene of the accident. The car's passenger noticed something small lying near the roadside. It was Dustin. Dustin died immediately, but Denise lived long enough to render a coherent account of the incident to EMS workers. Denise stated that she and Dustin were not even at the roadside when a large white or tan car hit them, so she could not understand how the accident could have happened. Denise also said that she "thought [the driver] had turned the lights out."
The police investigation of the scene revealed that there were tire tracks leaving the roadway, reaching as far as seven feet from the outside lane line, and traveling some thirty feet before returning to the road. The police also retrieved debris from the scene including broken grillwork and pieces of a headlight cover, which belonged to a 1982 Cadillac. The next day, the police found a 1982 Cadillac, titled to Lawrence Zanders, with the same parts missing from the front end of the car.
Zanders was arrested and indicted on two counts of aggravatedvehicular homicide, tampering with evidence, failure to stop afteran accident, two counts of involuntary manslaughter, with severalpredicate minor misdemeanor traffic violations.[1] At the conclusion of a jury trial in January 1993, the jury acquitted Zanders of: both counts of aggravated vehicular homicide, tampering with evidence, failure to stop after an accident, and driving without required lighted lights. The jury convicted Zanders of two counts of involuntary manslaughter and failure to drive within marked lanes. The jury was undecided about the failure to control charge, and the trial court dismissed that count.
On appeal, this court reversed in part and remanded, finding that the minor misdemeanor traffic offense could not serve as the predicate offense for involuntary manslaughter. State v. Zanders
(Apr. 5, 1994), Summit App. No. 16166, unreported, at 2, citingState v. Collins (1993), 67 Ohio St.3d 115, syllabus.[2]
During the pendency of the appeal, Daniel Ott, a fellow inmate who knew Zanders at Grafton Correctional Institute, sent a letter to the prosecutor, indicating that Zanders had revealed to Ott certain incriminating facts. Ott stated that Zanders told him that the accident occurred after Zanders saw Denise Charley at the side of the road, and deliberately swerved toward her to scare her.
After remand following appeal, the prosecutor used thisinformation from Ott to obtain a supplemental indictment for twocounts of involuntary manslaughter, based on two counts of thepredicate misdemeanor of aggravated menacing, a first degreemisdemeanor in violation of R.C. 2903.21. The trial court,however, determined that the aggravated menacing charges werebarred by the two-year statute of limitations, and consequentlythe involuntary manslaughter charges must be dismissed. Theprosecutor appealed the decision, and this court reversed. Weheld that the statute of limitations for a criminal offense doesnot begin to run until the corpus delicti, consisting of both thecriminal act and the criminal agency of the act, has beendiscovered. State v. Zanders (Nov. 22, 1995), Summit App. Nos.17147 17243, unreported, at 11-13. The criminal agency for theinstant involuntary manslaughter charge was based on theaggravated menacing, but that agency was not uncovered until Ott'sletter dated December 27, 1993. Id. at 12. Thus, we determinedthat the statute of limitations for the aggravated menacing didnot begin to run until December 27, 1993, and therefore thestatutory time had not expired prior to the grand jury indictment.
Id.
The case returned to the trial court, and that court made an evidentiary ruling that the prosecution could not introduce any evidence about the manner in which Zanders operated his car at the time of the incident. The trial court reasoned that because the jury had previously acquitted Zanders on the aggravated vehicular homicide charges, one of the elements of which was the reckless operation of the car, the state was collaterally estopped from relitigating the issue of recklessness, pursuant to Ashe v.Swenson (1970), 397 U.S. 436, 25 L.Ed.2d 469. The court's ruling excluded any evidence that Zanders drove outside the marked lanes, because he had been convicted of and fined for that offense. The trial court, however, ruled that a retrial on the involuntary manslaughter charges with the new predicate misdemeanor charges was not barred by double jeopardy based either on the previous conviction on involuntary manslaughter or on the acquittal on aggravated vehicular homicide. The state appealed, and this court again reversed and remanded. State v. Zanders (1997), 121 Ohio App.3d 131. This court determined that the court erred in applying collateral estoppel in a case where the defendant was convicted, not acquitted, of a charge in the prior trial. Id. at 135-136. We also determined that the trial court erred in applying collateral estoppel where the jury rendered inconsistent verdicts as to the issue of recklessness. Id. at 136. We observed that collateral estoppel only applies to issues clearly determined in the defendant's favor at the prior trial. Id. at 136-137.
After remand, the case proceeded to a jury trial on twocounts of involuntary manslaughter and two counts of aggravatedmenacing. On August 7, 1998, the jury returned verdicts of guiltyon the charges of involuntary manslaughter and aggravated menacingas to Denise Charley, and verdicts of not guilty on the charges ofinvoluntary manslaughter and aggravated menacing as to DustinCharley. Zanders appeals his conviction, assigning four errors.
II. ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING THE MOTION TO DISMISS BASED ON DOUBLE JEOPARDY GROUNDS; THE RULING VIOLATED APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 Zanders now appeals the trial court's denial of his motion to dismiss on the ground of double jeopardy. See Wenzel v. Enright (1993), 68 Ohio St.3d 63, paragraph two of the syllabus. Zanders asserts that, because he was previously tried and acquitted on the aggravated vehicular homicide, his retrial for involuntary manslaughter is barred by double jeopardy.
 The Double Jeopardy Clause of the Fifth Amendment to theUnited States Constitution, is applied to the states through theFourteenth Amendment. State v. Uskert (1999), 85 Ohio St.3d 593,594-595, citing Benton v. Maryland (1969), 395 U.S. 784,23 L.Ed.2d 707, and State v. Gustafson (1996), 76 Ohio St.3d 425,432. This protection is also embodied in Section 10, Article I ofthe Ohio Constitution. Uskert, supra. The Supreme Court of Ohiohas stated that, "the Double Jeopardy Clause of each Constitutionprohibits (1) a second prosecution for the same offense afteracquittal, (2) a second prosecution for the same offense afterconviction, and (3) multiple punishments for the same offense."Gustafson, 76 Ohio St.3d at 432, citing United States v. Halper
(1989), 490 U.S. 435, 440, 104 L.Ed.2d 487, 496.
In the instant case, Zanders asserts that although the charges of aggravated vehicular homicide and involuntary manslaughter with a predicate misdemeanor are based on two different statutory prohibitions, they are essentially the same offense. Zanders argues that the trial court was obliged to apply the test enunciated in Blockburger v. United States (1932),284 U.S. 299, 76 L.Ed. 306. The Blockburger court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id.
at 304, 76 L.Ed. at 309.
Zanders was indicted for involuntary manslaughter, in violation of R.C. 2903.04(B). At the time of the offense, that statute read: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor." The predicate misdemeanor was aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21. Zanders was previously tried and acquitted of aggravated vehicular homicide, in violation of R.C. 2903.06(A). That statute reads, "No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another."
The elements of involuntary manslaughter are: (1) causing death (2) as a result of (3) committing or attempting to commit a misdemeanor. R.C. 2903.04(B). The elements of aggravated vehicular homicide are: (1) causing death (2) as a result of (3) reckless operation of a motorized vehicle. See R.C. 2903.06(A). Involuntary manslaughter requires proof that the offender committed or attempted to commit a misdemeanor; aggravated vehicular homicide requires the proof of operation of a motorized vehicle, something not necessary to be proved under the involuntary manslaughter statute. While the aggravated vehicular homicide statute requires reckless operation, a misdemeanor, the involuntary manslaughter only requires an attempt to commit a misdemeanor. Furthermore, the instant underlying misdemeanor charged requires a specific mens rea, namely, "knowingly [causing] another to believe that the offender will cause serious physical harm to the person or property of such other person." R.C.2903.21. Because the statutory provisions of each crime require proof of a fact that the other does not, the Blockburger test indicates that the two crimes charged are not identical. Consequently, double jeopardy does not bar a subsequent prosecution for involuntary manslaughter, with the predicate misdemeanor of aggravated menacing.
In support of his double jeopardy claim, Zanders cites ourcase State v. Torres (1986), 31 Ohio App.3d 118. The defendant inTorres had pled guilty to driving under the influence, drivingwhile under suspension, involuntary manslaughter, and aggravatedvehicular homicide as to one victim. Id. He was sentenced toconsecutive terms for each felony offense. Id. at 118-119. Thiscourt determined that aggravated vehicular homicide andinvoluntary manslaughter, with a predicate offense of drivingunder the influence, were allied offenses, permitting convictionand sentencing on only one charge. Id. at 120. However, ourdecision was limited to the facts before us. We explicitlystated, "under different facts, the two offenses may not be deemedallied for purposes of R.C. 2941.25. No argument is made that theoffenses were committed separately or with a separate animus as toeach, which would allow the defendant to be sentenced on bothcounts under R.C. 2941.25(B)." Id. Clearly, the charge ofinvoluntary manslaughter in the instant trial, based on theallegation of aggravated menacing, constitutes an offensecommitted with a separate animus from that alleged in theaggravated vehicular homicide charge in Zanders' first trial,which was based on reckless operation.[3]
We find that the bar against double jeopardy does not apply, because aggravated vehicular homicide and involuntary manslaughter as a proximate result of aggravated menacing are two different offenses. Zanders' first assignment of error is not well taken, and it is overruled.
 III. ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO ORDER A MISTRIAL AFTER STATE WITNESS OTT TESTIFIED THAT HE HAD TAKEN A POLYGRAPH TEST.
In a pretrial hearing on motions, the trial court ruled that no mention would be made about a polygraph test taken by Daniel Ott, Zanders' fellow inmate at Grafton, who was prepared to testify for the prosecution. Notwithstanding the court's ruling, during direct examination the prosecution asked Ott whether he had discussed with the prosecutor Zanders' alleged confession. Ott responded, "After I was released from prison, I did. I took a lie detector. At that time." Defense counsel objected, and moved to strike the comment. The judge sustained the objection and granted the motion to strike, admonishing the jury, "You will disregard such testimony. It is worthless." Defense counsel moved for a mistrial, but the judge denied the motion.
Zanders now asserts that the trial court's failure to declare a mistrial was an abuse of discretion. While acknowledging that juries are presumed to follow instructions, Zanders cites Ohio cases where curative instructions were deemed to be insufficient to overcome the prejudice produced by the offensive testimony or evidence. Zanders argues that the state's case depended on proof of the aggravated menacing, and the only evidence supporting the aggravated menacing came from Ott. Consequently, Ott's mention of the polygraph test, with an implicit suggestion that he passed the test, impermissibly bolstered Ott's credibility and likely was the deciding factor for the jury.
This court has written that
 [a] mistrial need not be granted by the trial court unless justice requires and a fair trial is impossible. The decision to grant a mistrial lies within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of the court's discretion that results in material prejudice to the defendant. An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable.
 (Internal citations omitted.) State v. Arnott (Mar. 17, 1999), Summit App. No. 19015, unreported, at 5.
Zanders is correct that the jury had to find Ott's story credible in order to convict him on the aggravated menacing charge, which itself was an essential element of the involuntary manslaughter charge. Zanders argues that without the impermissible reference to the polygraph test, implicitly bolstering Ott's credibility, the jury would not have convicted Zanders of either offense. We do not agree.
Ott's reference to the polygraph test came after considerable testimony and evidence about the accident. At the time the trial court denied the motion for a mistrial, the jury had already heard about compelling physical evidence and eyewitness accounts that strongly corroborated Ott's version of events. Infra, page 15.
Had Ott never mentioned the polygraph test, it is not likelythat the jury would have been more inclined to disbelieve Ott'saccount of the confession, given the fact that it was inherentlyconsistent with the physical evidence and eyewitness statements.Our review of the record does not indicate that Ott's statementabout the polygraph, having been stricken by the trial court,prevented Zanders from receiving a fair trial. This court cannotconclude that the trial court abused its discretion in denyingZanders' motion for a mistrial. Zanders' second assignment oferror is overruled.
 IV. ASSIGNMENT OF ERROR III THE PROSECUTOR COMMITTED MISCONDUCT BY BOLSTERING THE CREDIBILITY OF STATE WITNESS OTT THROUGH THE PROSECUTOR'S PERSONAL OPINION DURING CLOSING ARGUMENT; THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING THE OBJECTION TO SUCH MISCONDUCT OF THE PROSECUTOR.
 Zanders claims that certain comments by the prosecutor during closing argument constituted impermissible expression of the prosecutor's credibility. Specifically, the prosecutor commented on whether Ott's cooperation with the prosecution was rendered in exchange for a reduction in Ott's sentence in a pending case.
Both the prosecutor and defense counsel questioned Ott as to whether he received any such consideration in exchange for his testimony. Ott repeatedly denied that there was any consideration made for his cooperation or that any promises were made in exchange for his testimony. Defense counsel asked Ott about previous occasions on which Ott acted as a "prison snitch" for the prosecution, and Ott denied getting special consideration in exchange for his testimony. Then defense counsel asked if, in exchange for his current testimony, "You're not looking for a sweetheart deal?" Ott responded, "I don't believe I'll get a sweetheart deal. I'm not asking for anything. I've asked the prosecution for nothing." Defense counsel asked Ott about charges pending at the time he first discussed his possible testimony against Zanders, for which Ott ultimately received nineteen days of time served instead of a possible eighteen-month prison sentence. Ott denied that he asked for or received a reduced sentence in that case. Defense counsel then asked Ott if the agreement didn't sound like "a sweetheart deal" in exchange for his testimony in this case. Ott responded, "Sounds like a plea bargain that goes on in courts every day."
In his closing argument, the prosecutor addressed the issue of the "deal" of a reduced sentence for Ott's cooperation with the prosecution. The prosecution stated, "That is a plea bargain that was made in this courtroom back then, every day, and probably still today. He received no consideration from me and my office. * * * He didn't ask for any, he didn't get any." Defense counsel objected to the statements, but his objection was overruled.
Zanders relies on the standard espoused in State v. Smith(1984), 14 Ohio St.3d 13. The Supreme Court of Ohio stated inSmith that "The test regarding prosecutorial misconduct inclosing arguments is whether the remarks were improper and, if so,whether they prejudicially affected substantial rights of thedefendant." Id. at 14.
The Supreme Court of Ohio has also found that comments alleged to be an expression of the prosecutor's personal beliefs were permissible where the comments were based on the evidence presented at trial. State v. Davie (1997), 80 Ohio St.3d 311,330, citing State v. Durr (1991), 58 Ohio St.3d 86, 96. Likewise, when a prosecutor has commented on the credibility of a witness, based on evidence presented at trial, the Supreme Court found that the comments were not a voucher for the witness, because it did not imply knowledge of facts outside the evidence. State v. Keene
(1998), 81 Ohio St.3d 646, 666. This court has likewise distinguished Smith where the prosecutor's comments are not based on knowledge outside the evidence at trial. State v. McCray
(1995), 103 Ohio App.3d 109, 119-120.
In the instant case, Ott testified that the reduction in his sentencing was due to a plea bargain, "a plea bargain that goes on in courts every day." Ott testified that he received no promises of a quid pro quo in exchange for his testimony. The prosecutor in his closing argument did comment on the lack of a quid pro quo for Ott's testimony. However, this was based on Ott's statements in his testimony.
We find that the prosecutor's comments were not improper, because they were based on evidence presented at trial. We overrule Zanders' third assignment of error.
 V. ASSIGNMENT OF ERROR IV THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Zanders argues that his convictions on one count of involuntary manslaughter and one count of the predicate misdemeanor of aggravated menacing, in connection with the Denise Charley, were against the weight of the evidence. A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (Jun. 2, 1999), Medina App. No. 2875-M, unreported, at 7. When an appellate court reviews the weight of the evidence,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.; see, also, State v. Ali
(Apr. 28, 1999), Summit App. No. 19119, unreported, at 9, citing State v. Otten (1986), 33 Ohio App.3d 339, 340.
 A. Aggravated Menacing
Zanders was convicted of the predicate misdemeanor of aggravated menacing as to Denise Charley. Aggravated menacing is governed by R.C. 2903.21(A), which provides that "No person shall knowingly cause another to believe that the offender will cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.2901.22(B). Violation of the aggravated menacing statute constitutes a first-degree misdemeanor. R.C. 2903.21(B).
The testimony of Ott established that Zanders told him that he drove the car toward Denise Charley with the intention of frightening her. According to Ott, Zanders said he did not even see Dustin until it was too late, and his mishandling of the car resulted in the death of both victims. Clearly, an offender who drives a car toward another person knowingly puts that individual in fear of serious physical harm. It is clear that the jury believed Ott's account, because it not only convicted Zanders of the aggravated menacing and involuntary manslaughter as to Denise, but it also acquitted on these counts as to Dustin.
Zanders now claims that Ott's testimony was the only evidence to support a conviction on aggravated menacing and, because Ott so totally lacked credibility, a conviction for aggravated menacing must be against the manifest weight of the evidence. We disagree. Clearly, Ott's credibility was an issue, and the jury did have to believe Ott's testimony in order to convict Zanders of aggravated menacing. However, Ott's testimony did not stand in isolation. Rather, there was considerable corroborative evidence before the jury.
First, there was testimony from one EMS worker that Denise Charley told him that she could not understand how the car hit her and Dustin, since they were not even at the edge of the road. The EMS worker also testified that Denise told him she thought that the driver had turned off his lights. The physical evidence showed that Zanders' car was the vehicle that struck the victims. The physical evidence also established that at the location of the accident a vehicle had left the roadway, traveled for thirty feet before returning to the marked lane, and at points was as far as seven feet from the outside lane line. A next-door neighbor testified that, from inside their house, she and her son heard a loud thump at the time of the accident. She testified that, "We kind of looked at each other and I said to him, `Something has been hit. Maybe we better go out.'" The passenger of a vehicle approaching the area a few moments after the accident testified that he saw Denise in the yard struggling to rise to her feet. The passenger directed the driver of his vehicle to turn the car around, and when the driver returned to the scene of the accident, the passenger saw Dustin lying at the side of the road.
Ott's version of Zanders' confession was consistent with the physical evidence and the testimony of eyewitnesses at the scene at the time of, or soon after, the accident. Ott's version would explain why Zanders' car struck pedestrians, standing well away from the roadside, who were clearly visible to other motorists driving by moments later. Ott's story is supported by Denise Charley's statement that she believed the driver had turned off his lights. It is supported by evidence of the vehicle's errant move from the roadway and an equally sudden return to the road for no apparent reason.
Finally, the jury heard the testimony of Zanders from his 1993 trial. In that testimony, Zanders offered the following account of the accident. At approximately 8:00 p.m. on October 23, 1992, Zanders was driving on Krumroy Road, past the scene of the accident, on his way to an AA meeting at Edwin Shaw Hospital. Zanders admittedly felt a thud, sounding as if it came from under his car. However, Zanders concluded that it was nothing, perhaps that he had struck a small animal or ran over a dead animal on the road. He testified that he looked in his rear view mirror and saw a "figure running from through the grass, running from the direction as to where the thud come from." He said that it "seemed to me that [the figure] was a man or a woman or whatever," but he also stated that "[y]ou couldn't see the figure, but you could see that there might be a movement if you are looking at it, something from the house." He did not stop to investigate the cause of the thud.
Although Zanders was not required to testify, once he testified on his own behalf, the jury was allowed to draw reasonable inferences from his testimony. To believe Zanders, the jury would have to believe that, although he struck the victims, the impact of an adult woman and a forty-pound child being struck on the front of Zanders' car was no more noticeable than when a car runs over a dead animal in the road. To believe Zanders, the jury would also have to believe that, although there were tire tracks at the very location where the victims were struck, Zanders' car did not leave the roadway. They would also have to believe that Zanders could not see Denise and Dustin approaching the roadside, although the passing auto passenger testified that he saw Denise in the yard, struggling to get to her feet, some twenty-five feet from the roadside. If the jury did not find Zanders' testimony credible, given the other testimony and evidence, then the jury was faced with the reasonable inference that Zanders was lying in his testimony in order to cover up his actual behavior at the time of the accident.
The clear physical evidence established that Zanders' carleft the roadway suddenly, with no alternative explanation forthat event. The jury apparently accepted Ott's story asconsistent with the physical evidence and the testimony of otherwitnesses. This court cannot conclude that in resolving theconflicts in the evidence before it, the jury clearly lost its wayin finding Zanders guilty of aggravated menacing as to DeniseCharley. This court cannot conclude that the jury's verdict as tothe aggravated menacing charge was against the manifest weight ofthe evidence.
 B. Involuntary Manslaughter
In order to obtain a conviction on involuntary manslaughter as to Denise Charley, the prosecution was obliged to prove beyond a reasonable doubt each element of R.C. 2903.04(B), as the statute existed at the time of the incident. The statute then provided that "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."
Having determined that the jury's verdict on the predicate misdemeanor of aggravated menacing was not against the weight of the evidence, we must conclude that the jury's finding as to the remaining elements of involuntary manslaughter was not against the manifest weight of the evidence.
Zanders testified that he was driving his car in the area at the approximate time of the accident. There was uncontroverted evidence that the debris found at the scene of the accident matched the pieces of headlight and grillwork that were missing from Zanders' car. Thus, the uncontroverted evidence before the jury was that Zanders' car struck the victims.
This court cannot conclude that the jury clearly lost its way in rendering a verdict of guilty on the charge of involuntary manslaughter, with the predicate misdemeanor of aggravated menacing, as to Denise Charley. Zanders' fourth assignment of error is overruled.
 VI.
Having overruled Zanders' assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
FOR THE COURT BATCHELDER, P.J., WHITMORE, J. CONCUR.
 ______________________ WILLIAM R. BAIRD
[1] The misdemeanor traffic offenses were: failure to drive within marked lanes in violation of R.C. 4511.33, failure to control in violation of R.C. 4511.202, and driving without lighted headlights in violation of R.C. 4513.03. All references to statutes are to those in effect on October 23, 1992.
[2] At the time of Zanders' first conviction and at the time of our prior decision, Collins was controlling law. Subsequently, the General Assembly amended R.C. 2903.04, governing involuntary manslaughter, to specifically permit minor misdemeanors to serve as predicate offenses for involuntary manslaughter charges. SeeState v. Zanders (Nov. 22, 1995), Summit App. Nos. 17147 17243, unreported, at 4, fn. 1. Subsequently, the Ohio Supreme Court upheld the constitutionality of the amended version of R.C.2903.04(B) as applied to minor misdemeanor traffic violations that result in vehicular homicide. State v. Weitbrecht (1999),86 Ohio St.3d 368, syllabus. However, since the amendment of the statute occurred after the October 23, 1992 accident, it is not applicable to this case.
[3] This court has already discussed the inconsistent verdicts rendered by the jury in Zanders' first trial, involving a verdict of guilty of failure to drive in the marked lane, an offense of recklessness, and a verdict of not guilty of aggravated vehicular homicide, which required a showing of reckless operation.Zanders, 121 Ohio App.3d at 136-137. Double jeopardy precludes later prosecution only when "a tribunal has decided an issue of ultimate fact in the defendant's favor." State v. Lovejoy (1997),79 Ohio St.3d 440, 443, citing Dowling v. United States (1990),493 U.S. 342, 348, 107 L.Ed.2d 708, 717. The Lovejoy court discussed the long history of decisions in which the United States Supreme Court has determined that double jeopardy does not apply in cases where a jury has rendered inconsistent verdicts.Lovejoy, 79 Ohio St.3d at 444-445, citing Dunn v. United States
(1932), 284 U.S. 390, 393, 76 L.Ed. 356, 358-359 (holding that double jeopardy does not apply to cases involving inconsistent jury verdicts), and United States v. Powell (1984), 469 U.S. 57,67, 83 L.Ed.2d 461, 470 (refusing to carve out exceptions to theDunn holding).